ROB BONTA
Attorney General of California
PAUL STEIN
Supervising Deputy Attorney General
SHARON L. O'GRADY
Deputy Attorney General
State Bar No. 102356
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA  94102-7004
  Telephone:  (415) 510-3834
  Fax:  (415) 703-1234
  E-mail:  Sharon.OGrady@doj.ca.gov
*Attorneys for Defendants*
*State of California et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **INTERNATIONAL FRANCHISE ASSOCIATION, ASIAN AMERICAN HOTEL OWNERS ASSOCIATION, SUPERCUTS FRANCHISEE ASSOCIATION, and the DD INDEPENDENT FRANCHISE OWNERS ASSOCIATION,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**STATE OF CALIFORNIA, et al.,**<br><br>Defendants. | 3:20-cv-02243-BAS-DEB<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND ALTERNATIVE MOTION FOR ABSTENTION; MEMORANDUM IN SUPPORT**<br><br>Date:        July 5, 2021<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Dept:       4B<br>Judge:     The Honorable Cynthia Bashant<br>Trial Date:  None set<br>Action Filed: 11/17/2020 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 3

INTRODUCTION/SUMMARY OF ARGUMENT ............................................. 3

BACKGROUND ......................................................................................... 5

I.     California's Standard for Determining Whether a Worker Should Be Classified as an Employee or an Independent Contractor. ...................................................................................... 5

     A.    The *Borello* Standard. ................................................................ 5

     B.    The *Dynamex* "ABC Test" ..................................................... 5

     C.    Subsequent Legislation ............................................................ 6

II.    The Federal Trade Commission Act and the Franchise Rule ............. 8

III.   State Regulation of Franchises ........................................................ 9

IV.   The Lanham Act ............................................................................ 9

PROCEDURAL BACKGROUND ................................................................ 10

I.     The Allegations of the Complaint ................................................. 10

II.    Procedural History ....................................................................... 11

LEGAL STANDARD ................................................................................ 11

ARGUMENT ........................................................................................... 12

I.     The Court Should Dismiss the Action Without Leave to Amend. ..... 12

     A.    This Action Should Be Dismissed Because Plaintiffs Lack Article III Standing and Their Claims Are Not Ripe. .............. 12

     B.    Plaintiffs' Preemption Claims Fail. ......................................... 17

          1.    The Franchise Rule Provides No Private Right of Action and Implicitly Precludes Private Enforcement. ..................................................................... 17

               a.    The FTC Act provides no private right of action. ................................................................. 17

               b.    The FTC Act and Franchise Rule implicitly preclude private enforcement. .......................... 17

          2.    The ABC Test Is Not Preempted. ................................... 18

               a.    The ABC Test is not preempted by the Franchise Rule. ........................................................ 19

               b.    The ABC Test is not preempted by the Lanham Act. ............................................................ 22

                    (1)   Plaintiffs' Lanham Act preemption claim fails as matter of law under *IFA v. Seattle*. ..................................................... 22

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS
(continued)

**Page**

      (2)    The ABC Test does not inevitably require franchisors to abandon their trademarks ................................................. 24

C.    Plaintiffs' Dormant Commerce Clause Claim Fails. ................ 27

    1.    The ABC Test Is Not Protectionist or Discriminatory. ............................................ 27

    2.    The ABC Test Does Not Directly Regulate Interstate Commerce. ..................................... 29

    3.    As a Matter of Law, the ABC Test Does Not Significantly Burden Interstate Commerce. ................ 29

D.    Plaintiffs' Claim Seeking a Declaration Interpreting California Labor Code Section 2775 Fails. ................ 32

E.    Plaintiffs' Takings Claim Fails. ............................. 33

    1.    The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Takings Claim. ............................. 33

    2.    The Eleventh Amendment Bars Plaintiffs' Takings Claim. ......................................... 34

    3.    On the Merits, Plaintiffs' Taking Claim Fails. ................ 34

F.    Plaintiffs' Claim for Injunctive Relief Adds Nothing. ............. 35

G.    Amendment of the Complaint Would Be Futile. ................. 35

II.    Alternatively, the Court Should Abstain. ............................ 35

CONCLUSION ................................................................. 37

ii

**TABLE OF AUTHORITIES**

**Page**

CASES

*1-800-Got Junk? LLC v. Superior Court*
   189 Cal. App. 4th 500 (2010) ....................................................................... 9

*Agua Caliente Band of Cahuilla Indians v. Hardin*
   223 F.3d 1041 (9th Cir. 2000) ..................................................................... 32

*Armstrong v. Exceptional Child Ctr.*
   575 U.S. 320 (2015) ..................................................................................... 17

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ..................................................................................... 12

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
   729 F.3d 937 (9th Cir. 2013) ........................................................... 27, 29, 30

*Barcamerica Int'l, USA Trust v. Tyfield Importers, Inc.*
   289 F.3d 589 (9th Cir. 2002) ................................................................. 24, 27

*Bell Atlantic Corp. v. Twombly*
   550 U.S. 544 (2007) ..................................................................................... 12

*Bluetooth SIG, Inc. v. FC US LLC*
   463 F. Supp. 3d 1169 (N.C. Cal. 2020) ...................................................... 26

*Bridge Aina Le-a, LLC v. Land Use Comm'n*
   950 F.3d 610 (9th Cir. 2020) ....................................................................... 34

*California Trucking Ass'n v. Bonta*
   ___ F.3d ___, No. 20-55106, 2021 WL 1656286 (Apr. 28, 2021) ........ 19, 20, 22

*California Trucking Ass'n v. Su*
   903 F.3d 953 (9th Cir. 2018) ........................................................... 19, 21, 36

*Chinatown Neighborhood Ass'n v. Harris*
   794 F.3d 1136 (9th Cir. 2015) ..................................................................... 30

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*
   527 U.S. 666 (1999) ..................................................................................... 32

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Courtney v. Goltz*
  736 F.3d 1152 (9th Cir. 2013) ................................................................. 35

*Daniels-Hall v. Nat'l Educ. Ass'n*
  629 F.3d 992 (9th Cir. 2010) .................................................................. 12

*Doe v. Regents of Univ. of Cal.*
  891 F.3d 1147 (9th Cir. 2018) ................................................................. 33

*Dreisbach v. Murphy*
  658 F.2d 720 (9th Cir. 1981) .................................................................. 17

*Dynamex Operations W. v. Super. Ct.*
  4 Cal. 5th 903 (2018) ..................................................................*passim*

*Edwin K. Williams & Co v. Edwin K. Williams &Co.-East*
  542 F.2d 1053 (9th Cir. 1976) ................................................................. 26

*Exxon Corp. v. Governor of Md.*
  437 U.S. 117 (1978) .......................................................................... 30, 31

*Gadsden Indus. Park, LLC v. United States*
  956 F.3d 1362 (Fed. Cir. 2020) ............................................................... 33

*Gator.com Corp. v. L.L. Bean, Inc.*
  398 F.3d 1125 (9th Cir. 2005) ................................................................. 12

*Gilbertson v. Albright*
  381 F.3d 965 (9th Cir.2004) .................................................................. 36

*Golden Door, Inc. v. Odisho*
  646 F.2d 347 (9th Cir. 1980) .................................................................. 23

*Hensler v. City of Glendale*
  9 Cal. 4th 1 (1994) ......................................................................... 33, 34

*Hokto Kinoke Co. v. Concord Farms, Inc.*
  736 F.3d 1085 (9th Cir. 2013) ............................................................. 15, 26

iv

1
2

# TABLE OF AUTHORITIES
### (continued)

<u>Page</u>

3
4
5

*In re Volkswagen "Clean Diesel" Marketing Sales Practices &*
    *Products Liability Litig.*
    959 F.3d 1201 (9th Cir. 2020) .................................................................... 18, 19

6

*Int'l Franchise Ass'n v. City of Seattle*
    803 F.3d 389 (9th Cir. 2015) ........................................................................*passim*

7
8

*Jachetta v. United States*
    653 F.3d 898 (9th Cir. 2011) .............................................................................. 34

9
10

*Kansas v. Garcia*
    140 S. Ct. 791 (2020) ................................................................................... 17, 19

11
12

*Knick v. Township of Scott*
    139 S. Ct. 2162 (2019) ....................................................................................... 33

13
14

*Knox v. Brnovich*
    907 F.3d 1167 (9th Cir. 2018) ............................................................. 12, 18, 19

15
16

*La. Pub. Serv. Comm'n v. FCC*
    476 U.S. 355 (1986) ........................................................................................... 21

17
18

*Ladd v. Marchbanks*
    971 F.3d 574 (6th Cir. 2020) ............................................................................. 34

19

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014) ............................................................................................. 9

20
21

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
    416 F.3d 940 (9th Cir. 2005) ....................................................................... 12, 35

22
23

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ........................................................................................... 13

24
25

*Mariniello v. Shell Oil Co.*
    511 F.3d 853 (3d Cir. 1975) .............................................................................. 23

26
27

*Martinez v. Combs*
    49 Cal. 4th 35 (2010) ........................................................................................... 5

28

v

1

2

## <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

3

4

*Mass. v. Morash*
    490 U.S. 107 (1989) ................................................................ 19

5

6

*Mfd. Home Cmtys, Inc. v. City of San Jose*
    420 F.3d 1022 (9th Cir. 2005) ................................................ 33

7

8

*Murphy v. Nat'l Collegiate Athletic Ass'n*
    138 S. Ct. 1461 (2018) .................................................... 17, 18

9

*N.Y. v. FERC*
    535 U.S. 1 (2002) .................................................................. 21

10

11

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*
    567 F.3d 521 (9th Cir. 2009) .................................................. 28

12

13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) ................................... 29, 30, 31

14

15

*Navarro v. Block*
    250 F.3d 729 (9th Cir. 2001) .................................................. 12

16

17

*Pakdel v. City & Cty. of S.F.*
    952 F.3d 1157 (9th Cir. 2020) ................................................ 34

18

19

*Patterson v. Domino's Pizza, LLC*
    60 Cal. 4th 474 (2014) ..................................................... 22, 29

20

21

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984) ................................................................ 32

22

*Pennzoil Co. v. Texaco, Inc.*
    481 U.S. 1 (1987) .................................................................. 36

23

24

*Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*
    768 F.3d 1037 (9th Cir. 2014) ........................................... 27, 29

25

26

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970) ......................................................... 29, 31

27

28

*Potrero Hills Landfill, Inc. v. Cty. of Solano*
    657 F.3d 876 (9th. Cir. 2011) ........................................... 35, 36

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*Protectmarriage.com-Yes on 8 v. Brown*
4           752 F.3d 827 (9th Cir. 2014) ............................................................ 13

5

*Railroad Commission v. Pullman Co.*
6           312 U.S. 496 (1941) ................................................................... *passim*

7

*Rocky Mountain Farmers Union v. Corey*
           913 F.3d 940 (9th Cir. 2019) ........................................................... 33
8

*S.G. Borello & Sons, Inc. v. Department of Industrial Relations*
9           48 Cal. 3d 341 (1989) ................................................................ *passim*

10

*Safe Air for Everyone v. Meyer*
11           373 F.3d 1035 (9th Cir. 2004) ......................................................... 12

12

*Seven Up Pete Venture v. Schweitzer*
13           528 F.3d 948 (9th Cir. 2008) .......................................................... 34

14

*State v. Frampton*
15           737 P.2d 183 (Utah 1987) .............................................................. 23

16

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*
17           ___ U.S. ___, 139 S. Ct. 2249 (2019) ............................................. 27

18

*United Food Workers & Commercial Workers Local 751 v. Brown*
           *Group, Inc.*
19           517 U.S. 544 (1996) ..................................................................... 33

20

*United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgt. Auth.*
21           550 U.S. 330 (2007) ..................................................................... 27

22

*Vasquez v. Jan-Pro Franchising Int'l, Inc.*
23           10 Cal. 5th 944 (2021) ...............................................22, 29, 36, 37

24

*Vasquez v. Jan-Pro Franchising Int'l, Inc.*
25           939 F.3d 1045 (9th Cir. 2019) ....................................................36, 37

26

*Vasquez v. Jan-Pro Franchising Int'l, Inc.*
           986 F.3d 1106 (9th Cir. 2021) .................................................. *passim*
27

28

vii

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4

*Voluntary Ass'n of Religious Leaders, Churches & Orgs. v. Waihee*
 800 F. Supp. 882 (D. Haw. 1992) ............................................................ 16

5
6

*Ward v. United Airlines*
 889 F.3d 1068 (9th Cir. 2018) ............................................................ 37

7
8

*Ward v. United Airlines*
 9 Cal. 5th 732 (2020) ............................................................ 37

9
10

*Ward v. United Airlines*
 986 F.3d 1234 (9th Cir. 2021) ............................................. 27, 29, 37

11

*Wash. State Grange v. Wash. State Republican Party*
 552 U.S. 442 (2008) ............................................................ 16

12
13

*Western States Trucking Ass'n v. Schoorl*
 377 F. Supp. 3d 1056 (E.D. Cal. 2019) ................................... 28, 31

14
15

*Wolfson v. Brammer*
 616 F.3d 1045 (9th Cir. 2010) ............................................................ 13

16
17

*Yoder v. Western Express, Inc.*
 181 F. Supp. 3d 704 (C.D. Cal. 2015) ................................................ 28

18
19

*Ex parte Young*
 209 U.S. 123 (1908) ............................................................ 32

20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

United States Code, Title 15
   §§ 41-58 ...................................................................................8, 18, 21
   §§ 45-58 ...............................................................................................17
   § 45(a)(1) ...............................................................................................8
   § 45(a)(1)(2) ........................................................................................20
   § 45(a)(2) ...............................................................................................8
   § 45(b) ...................................................................................................8
   § 45(c) ...................................................................................................8
   § 45(l) ....................................................................................................8
   § 45(m) ..................................................................................................8
   § 57b(e) .................................................................................................8
   § 1117 ....................................................................................................9
   § 1119 ....................................................................................................9
   § 1125(a) ...............................................................................................9
   § 1127 ..................................................................................................10

2019 California Statutes, chapter 296
   § 1(c) .....................................................................................................7
   § 1(e) .....................................................................................................7

California Business and Professions Code
   §§ 20000, et seq. ...................................................................................9
   § 20020 ..................................................................................................9

California Corporations Code
   §§ 31000, et seq. ...................................................................................9
   § 31001 ..................................................................................................9

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Labor Code
§ 2774 .......................................................................................... 32
§ 2775 ................................................................................... 32, 36
§ 2775(a)(1) ..................................................................................... 7
§ 2775(b)(1) ................................................................. 7, 8, 15, 16
§ 2775(b)(1)(A) ...................................................................... 25, 26
§ 2775(b)(3) ............................................................................. 8, 25
§§ 2776-2784 ................................................................................. 7
§ 2785(d) ......................................................................................... 8
§ 3351(i) ........................................................................................... 7

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Fifth Amendment ........................................................................ 33
Eleventh Amendment ........................................... 4, 32, 33, 34
Fourteenth Amendment ........................................................ 33
Article III ....................................................................... 13, 16, 34

**OTHER AUTHORITIES**

Code of Federal Regulations, Title 16
§ 436.1(i) ...................................................................................... 19
§§ 436.1-436.11 ..................................................................... 8, 19
§ 436.1(h)(1) .............................................................................. 19
§ 436.1(k) .................................................................................... 19
§ 436.5(t) .................................................................................... 14
§ 436.6 ......................................................................................... 17
§ 436.10(b) .......................................................................... 18, 20
§ 439.9 ........................................................................................... 8

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1) ......................................................................... 1, 11
Rule 12(b)(6) ......................................................................... 1, 12
Rule 25(d) ...................................................................................... 1

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3

**OTHER AUTHORITIES**

4
5

20A Am. Jur. Pl. & Pr. Forms Private Franchise Contracts § 1 (Sept.
   2020 Update) ............................................................................... 8, 9, 30

6
7

*An Overview of the Business and Law of Franchising*, Managing Legal
   Issues in Franchising, 2013 WL 3773409 (June 2013) ................................ 14, 20

8
9

*Highlights and Anaysis of FTC Staff Report Detailing Forthcoming
   Franchise Rule*, Bus. Franchise Guide ¶ 12,881, 2001 WL 7204263
   (Aug. 25, 2004) ............................................................................... 8, 9

10
11

*Sections 346.10 and 436.11: Other Laws and Severability*, Business
   Franchise Guide (CCH), ¶ 6067 H., 2015 WL 6838253 (2018) ....................... 18

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF MOTION**

PLEASE TAKE NOTICE THAT on July 5, 2021, before the Honorable Cynthia Bashant in Courtroom 4B of the United States District Court for the Southern District of California, located at 333 West Broadway, Suite 420, San Diego, California 92101, Defendants State of California et al.[1] will and hereby do move this Court to dismiss without leave to amend Plaintiffs' First Amended Complaint for Declaratory and Injunctive Relief pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  In the alternative, Defendants will and hereby do move that the Court abstain and stay this action, to allow the state courts to determine issues of state law that may resolve or narrow the issues.  **This motion is made following the conference of counsel that took place on April 15, 2021.**

The motion to dismiss is brought on the grounds that Plaintiffs lack standing and their claims are not ripe, and the First Amended Complaint fails to state a claim as a matter of law.  Defendants' alternative request to stay the action is based on *Railroad Commission v. Pullman Co.*, U.S. 496 (1941). The motion is based on this Notice, the Memorandum of Points and Authorities, the papers and pleadings on file in this action, and upon such matters as may be presented to the Court at the time of the hearing, if a hearing is requested by the Court.

---

[1] This motion is filed on behalf of all named Defendants, who are the State of California and the following state officials, all in their official capacities: Rob Bonta, Attorney General; Julie Sue, Secretary of the California Labor and Workforce Development Agency; Katie Hagen, Director of the Department of Industrial Relations; Lilia García-Brower, Chief of the Division of Labor Standards Enforcement of the Department of Industrial Relations; and Rita Saenz, Director of the Employment Development Department (EDD).  Ms. Saenz was appointed EDD Director on December 30, 2020 and is substituted in for Patrick Henning, Jr.  *See* Fed. R. Civ. P. 25(d). Mr. Bonta took office as the Attorney General on April 23, and is substituted in for Xavier Becerra.  *Id*.

1

1

Dated:  April 30, 2020

Respectfully Submitted,

2

ROB BONTA
Attorney General of California

3

PAUL STEIN
Supervising Deputy Attorney General

4

*/s/ Sharon L. O'Grady*

5

6

SHARON L. O'GRADY
Deputy Attorney General

7

*Attorneys for Defendants
State of California et al.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

1
2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION/SUMMARY OF ARGUMENT

3    Under California's labor laws, employees are entitled to a variety of basic

4 rights, protections, and benefits, including the minimum wage, safe working

5 conditions, sick leave, worker's compensation, unemployment benefits, and

6 disability benefits.  Some employers have strong economic incentives to avoid

7 providing these benefits—and thereby gain an advantage over their law-abiding

8 competitors—by misclassifying their workers as independent contractors.

9 *Dynamex Operations W. v. Super. Ct.*, 4 Cal. 5th 903, 913 (2018).  As the

10 California Supreme Court has observed, "misclassification of workers as

11 independent contractors rather than employees is a very serious problem, depriving

12 federal and state governments of billions of dollars in tax revenue and millions of

13 workers of the labor law protections to which they are entitled." *Id.*  To combat the

14 ills of worker misclassification, California uses a standard, known as the "ABC

15 Test," to determine whether particular workers are bona fide independent

16 contractors or, in fact, employees.

17    At issue in this case is the application of California's ABC Test to determine

18 whether a franchisee is an employee of his or her franchisor.  That determination is

19 highly fact-dependent because, among other reasons, every franchise relationship is

20 governed by contract, and franchisees vary widely in terms of their size and

21 sophistication. While some franchisees are large corporations that are themselves

22 major employers, many franchisees are individual, mom-and-pop operators who

23 may be relatively unsophisticated, may not speak English as a first language, and

24 may pay a few thousand dollars to purchase a franchise that holds out the promise

25 of independence but is effectively a low-wage job.  *See Vasquez v. Jan-Pro*

26 *Franchising Int'l, Inc.*, 986 F.3d 1106, 1118, 1120 (9th Cir. 2021) ("*Vasquez III*").

27 Applying the ABC Test to franchisors helps to ensure that workers who should be

28 classified as employees can provide for themselves and their families, and puts

1   franchisors "on equal footing with other industry participants who treated those

2   providing services for them as employees." *Id*. at 1118.

3       Plaintiffs, franchising industry trade associations, ask this Court to rule that,

4   when a franchisor is the putative employer, California's ABC Test cannot be

5   applied without running afoul of federal consumer protection and trademark law.

6   Plaintiffs claim that the entire franchise industry will be devastated, causing

7   national and international market chaos if franchisors are required to comply with

8   the law.  Despite a recent Ninth Circuit decision holding that application of the

9   ABC Test to franchises is a fact-intensive inquiry, *Vasquez III*, 986 F.3d at 1122,

10  Plaintiffs challenge the ABC Test on its face—without alleging any facts about any

11  particular franchise relationship.  And they ask this Court to predict how a

12  California court would apply the statute to franchises in this factual vacuum.

13  Plaintiffs' challenge fails as a matter of law.

14      Preliminarily, Plaintiffs' complaint fails to allege a case or controversy under

15  Article III of the Constitution; their claims are not ripe, and they lack standing.  To

16  the extent they could assert a ripe controversy, Plaintiffs' preemption and dormant

17  Commerce Clause claims are meritless, as is their Takings Clause claim, which

18  among other problems is barred by the Eleventh Amendment.  The defects in the

19  First Amended Complaint cannot be cured by amendment, and therefore it should

20  be dismissed without leave to amend.

21      If the Court concludes that dismissal is not appropriate, however, the Court

22  should grant Defendant's alternative motion for abstention under *Railroad*

23  *Commission v. Pullman Co.*, 312 U.S. 496 (1941).  Plaintiffs' constitutional claims

24  hinge on significant and unsettled questions of state law; California courts have yet

25  to authoritatively apply the ABC Test in the franchise context.  Accordingly,

26  abstention is appropriate.  Because this Court's construction of California law

27  would not be binding on state courts, any decision it makes here could be rendered

28

4

advisory.  In the interests of comity, and to avoid premature constitutional litigation based on unsettled questions of state law, this Court should abstain.

## BACKGROUND

I.   **CALIFORNIA'S STANDARD FOR DETERMINING WHETHER A WORKER SHOULD BE CLASSIFIED AS AN EMPLOYEE OR AN INDEPENDENT CONTRACTOR**

### A.   The *Borello* Standard.

Whether workers are classified as employees or independent contractors is significant because California law affords employees significant rights that independent contractors do not enjoy.  *See Dynamex*, 4 Cal. 5th at 912-13.  Prior to 2018, regulatory agencies and courts used the multi-factor test enunciated in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989), to determine whether a worker is an employee or independent contractor.  In addition to the degree of control, the inquiry under *Borello* looks at a variety of factors, including

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id.* at 350-51.

### B.   The *Dynamex* "ABC Test"

Almost thirty years after *Borello*, the California Supreme Court issued *Dynamex*.  *Dynamex* analyzed the "suffer or permit to work" definition of employment found in the California Industrial Welfare Commission Wage Orders[2]

---

[2] The other definitions of employment, which are not at issue in this case, are "to exercise control over the wages, hours or working conditions" and "to engage, thereby creating a common law employment relationship."  *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010).

5

1    and adopted a three-part test to evaluate employment status under that definition.

2    *Dynamex* noted that the "critically important objectives" of wage and hour laws,

3    including ensuring low-income workers' wages and conditions despite their weak

4    bargaining power, "support a very broad definition of the workers who fall within"

5    the employee classification.  *Id.* at 952.  Similarly, a broad definition benefits

6    "those law-abiding businesses that comply with the obligations imposed" by state

7    labor laws, "ensuring that such responsible companies are not hurt by unfair

8    competition from competitor businesses that utilize substandard employment

9    practices."  *Id.*  Lastly, the ABC Test benefits "the public at large, because if the

10   wage orders' obligations are not fulfilled, the public often will be left to assume the

11   responsibility of the ill effects to workers and their families resulting from

12   substandard wages or unhealthy and unsafe working conditions."  *Id.* at 953.

13        The "ABC Test" determines whether a worker is an employee or an

14   independent contractor for the purposes of California wage and hour laws.

15   *Dynamex*, 4 Cal. 5th at 916-17, 942, 958-63.  Under the "ABC Test," for a worker

16   to be considered an independent contractor, three separate criteria must be met:

17        A.  Is the worker free from the control and direction of the hiring
18        entity in the performance of the work, both under the contract for the
          performance of the work and in fact?

19        B.  Does the worker perform work that is outside the usual course of
20        the hiring entity's business?

21        C.  Is the worker customarily engaged in an independently
          established trade, occupation or business as the work performed for the
22        hiring entity?

23   *Id.* at 958-61.

24   **C.   Subsequent Legislation**

25        On September 18, 2019, California enacted Assembly Bill 5 ("AB 5"), which

26   became effective January 1, 2020.  AB 5 codified and expanded the scope of the

27   ABC Test adopted in *Dynamex*.  The Legislature found that "[t]he misclassification

28   of workers as independent contractors has been a significant factor in the erosion of

6

the middle class and the rise in income inequality." 2019 Cal. Stat. ch. 296 § 1(c). The Legislature noted that "a 2000 study commissioned by the U.S. Department of Labor found that nationally between 10% and 30% of audited employers misclassified workers," and that the California Employment Development Department had conducted audits and investigations and "identified nearly *half a million* unreported employees." AB 5 Bill Analysis, Assembly Committee on Labor and Employment 2 (July 5, 2019) (emphasis in original).[3] By adopting the ABC Test, AB 5 "restores these important protections to potentially several million workers who have been denied these basic workplace rights that all employees are entitled to under the law." 2019 Cal. Stat. ch. 296 § 1(e). The ABC Test has been extended to now apply to (among other things) workers' compensation, unemployment insurance, and disability insurance. Cal. Lab. Code § 2775(a)(1); *id*. § 3351(i).

As relevant here, Labor Code section 2775(b)(1) states:

> For purposes of this code and the Unemployment Insurance Code, and for the purposes of wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied:
>
> (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
>
> (B) The person performs work that is outside the usual course of the hiring entity's business.
>
> (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

The Labor Code contains several exceptions. Cal. Labor Code §§ 2776-2784. None exempts franchisors as such from the requirements of Section 2775(b)(1).

---

[3] Available at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201920200AB5 [last visited Jan 13, 2020].

1  *See id.* If a court determines that the ABC Test "cannot be applied to a particular
2  context," then the *Borello* standard applies. *Id*. §§ 2775(b)(3), 2785(d).

3  ## II.  THE FEDERAL TRADE COMMISSION ACT AND THE FRANCHISE RULE

4       The Federal Trade Commission Act ("FTC Act") declares unlawful "[u]nfair
5  methods of competition in or affecting commerce, and unfair and deceptive acts or
6  practices in or affecting commerce." 15 U.S.C. § 45(a)(1). The FTC Act generally
7  empowers the Federal Trade Commission (the "Commission") to "prevent" such
8  unlawful conduct, and authorizes the Commission to conduct proceedings and issue
9  cease and desist orders, which are subject to review by the U.S. Court of Appeals.
10 *Id*. § 45(a)(2), (b), (c), (*l*)-(m). The FTC Act does not provide a private right of
11 action, nor does it contain a preemption provision. *See id*. §§ 41-58. Rather, the
12 Act states that its remedies "are in addition to, and not in lieu of, any other remedy
13 or cause of action provided by State or Federal law." *Id*. § 57b(e).

14      Pursuant to the FTC Act, the Commission adopted the Franchise Rule
15 establishing various requirements governing the solicitation of franchise
16 opportunities, intended for the protection of prospective franchisees. *See* 16 C.F.R.
17 §§ 436.1-436.11. In addition, the Rule makes certain claims, misrepresentations, or
18 actions by franchisors "an unfair or deceptive act of practice in violation of the
19 Section 5 of the Federal Trade Commission Act." *Id*. § 439.9.

20      Although the Franchise Rule imposes disclosure requirements on franchisors,
21 it does not directly govern the franchisor/franchisee relationship. Rather, the FTC
22 has recognized that, with limited exceptions not applicable here,
23 franchisor/franchisee relationships "are regulated at the state level," and "the [FTC]
24 has no authority to engage in far-reaching rulemaking that would regulate the
25 substantive terms of private franchise contracts." *Highlights and Analysis of FTC*
26 *Staff Report Detailing Forthcoming Franchise Rule*, Bus. Franchise Guide (CCH) ¶
27 12,881, 2001 WL 7204263 (Aug. 25, 2004) (hereafter, "*Highlights*"). *See* 20A Am.
28 Jur. Pl. & Pr. Forms Private Franchise Contracts § 1 (Sept. 2020 Update).

### III.  STATE REGULATION OF FRANCHISES

In contrast to federal law, state regulation of franchising is extensive.  *See* 20A Am. Jur. Pl. & Pr. Forms Private Franchise Contracts § 1 (Sept. 2020 Update); *Highlights*, *supra*, ¶ 12,881.  California's regulation of franchises is contained in two acts: the Franchise Investment Act, Cal. Corp. Code §§ 31000, et seq. (aimed at prospective franchisees) and the California Franchise Relations Act, Cal. Bus. & Prof. Code §§ 20000, et seq. (intended to protect franchise investors).

Similar to the FTC's Franchise Rule, the Franchise Investment Act protects *prospective franchisees* by "provid[ing] each prospective franchisee with the information necessary to make an intelligent decision" whether to enter into a franchise relationship.  It also is intended "to prohibit the sale of franchises where the sale would lead to fraud or the likelihood that the franchisor's promises would not be fulfilled."  Cal. Corp. Code § 31001.  The California Franchise Relations Act, in contrast, is intended to protect *franchise investors*.  *1-800-Got Junk? LLC v. Superior Court*, 189 Cal. App. 4th 500, 515-16 (2010).  For example, it contains provisions restricting a franchisor's ability to terminate a franchise.  *See* Cal. Bus. & Prof. Code § 20020.  Plaintiffs' original Complaint expressly conceded, and Plaintiffs' First Amended Complaint ("FAC") implicitly concedes, that the California Franchise Investment Act and the California Franchise Relations Act are not inconsistent with, and are not preempted by, either the Franchise Rule or the Lanham Act.  Complaint ¶ 16; FAC ¶ 24.

### IV.  THE LANHAM ACT

The Lanham Act, among other things, provides a civil right of action for false advertising and false association.  15 U.S.C. § 1125(a); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).  The Lanham Act also provides remedies for infringement of a federally licensed trademark.  15 U.S.C. §§ 1117, 1119.  The purposes of the Act are to

9

1
2
3
4
5
6

> regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

7   15 U.S.C. § 1127. The Lanham Act protects a trademark holder's interests in its

8   trademarks, but does not govern franchise relationships or, more particularly,

9   whether a franchisee should be deemed an employee or an independent contractor.

10                          **PROCEDURAL BACKGROUND**

11  **I.    THE ALLEGATIONS OF THE COMPLAINT**

12         This action was brought by the International Franchise Association ("IFA"),

13  Asian American Hotel Owners Association, Supercuts Franchise Association, and

14  DD Independent Franchise Owners Association.  Plaintiffs' original Complaint

15  sought a declaration that California's ABC Test is preempted by both the FTC

16  Franchise Rule and the Lanham Act, and an injunction preventing the State from

17  enforcing the ABC Test against franchisors and franchisees.

18         After Defendants filed a motion to dismiss, Plaintiffs filed their FAC.  Like

19  the initial Complaint, the FAC does not allege any facts about any particular

20  franchise relationship or contract.  Rather, the FAC alleges generally that franchises

21  are a "ubiquitous and thriving business model" under which "the franchisor sells

22  the right to use its trademarks and comprehensive business plan."  FAC ¶ 2.  It

23  further alleges that the FTC Franchise Rule defines a "franchise" as a "*commercial

24  relationship or arrangement*" in which the franchisor "*will exert or has the authority

25  to exert a significant degree of control* over the franchisee's method of operation."

26  *Id*. ¶¶ 17-18 (emphasis in original).  According to the FAC, application of the ABC

27  Test will result in every franchisor-franchisee relationship being deemed an

28  employment relationship, thereby "remov[ing]" all franchises "from the purview"

10

of the Franchise Rule and frustrating its purposes.  FAC ¶¶ 91, 94.  The FAC further alleges that the ABC Test is preempted by the Lanham Act, on the theory that the control a franchisor must exercise over the licensed goods or services in order to maintain a valid trademark will necessarily trigger the "control and direction" prong of the ABC Test, rendering all franchisees employees of their franchisors.  *Id.* ¶¶ 95-98.  According to the Complaint, this stands as an obstacle to the purposes of the Lanham Act.  *Id.* ¶ 98.  Unlike the initial Complaint, the FAC also alleges that the ABC Test violates the dormant Commerce Clause, because it "substantially burdens and disrupts the franchise relationship and the interstate and international markets for it."  *Id.* ¶ 102.  It also alleges that the ABC Test effects a regulatory taking, depriving "Plaintiffs' members of the economically viable value of their property without due process."  *Id.* ¶¶ 131, 134.  Finally, Plaintiffs ask the Court to issue a declaration "harmonizing" the ABC Test with the California Franchise Investment Act, the California Franchise Relations Act, the Lanham Act, and the Franchise Rule, and mandating that, instead of the ABC Test, "*Borello* governs" in the franchise context.  *Id.* ¶ 128.

## II. PROCEDURAL HISTORY

This action was filed on November 17, 2020.  Pursuant to joint motion, Defendants' time to plead or otherwise respond to the FAC was extended to April 30, 2021.  This motion is made following the conference of counsel that took place on April 15, 2021.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a complaint on the basis that there is no subject matter jurisdiction.  In such situations, the party asserting jurisdiction has the burden of proving it exists.  A Rule 12(b)(1) challenge to subject matter jurisdiction may be "facial" or "factual."  A facial attack challenges the sufficiency of the jurisdictional allegations in the complaint, while in resolving a factual attack the court "need not presume the

11

truthfulness of the plaintiff's allegations." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A complaint may also be dismissed for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal is proper where there is no cognizable legal theory or there are insufficient facts alleged to support a cognizable legal theory.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).   To defeat a Rule 12(b)(6) motion, a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In deciding a Rule 12(b)(6) motion, a court must assume the plaintiff's allegations of fact are true and must draw all reasonable inferences in their favor.  *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  On a facial challenge to a statute on grounds of federal preemption, a challenger "must show that no set of circumstances exists under which the [state statute] would be valid."  *Knox v. Brnovich*, 907 F.3d 1167, 1173 (9th Cir. 2018) (citation omitted).

Leave to amend need not be granted if "it is clear that the complaint could not be saved by an amendment."  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

## ARGUMENT

**I.    THE COURT SHOULD DISMISS THE ACTION WITHOUT LEAVE TO AMEND.**

**A.    This Action Should Be Dismissed Because Plaintiffs Lack Article III Standing and Their Claims Are Not Ripe.**

The FAC should be dismissed for lack of jurisdiction.  "It is the inexorable command of the United States Constitution that the federal courts confine themselves to actual cases and controversies."  *Gator.com Corp. v. L.L. Bean, Inc.*,

12

1  398 F.3d 1125, 1128 (9th Cir. 2005) (citing U.S. Const. art III, § 2, cl. 1).

2  Article III requires that an actual controversy exist at all phases of the litigation.

3  *Protectmarriage.com-Yes on 8 v. Brown*, 752 F.3d 827, 834 (9th Cir. 2014).  Here,

4  subject matter jurisdiction is lacking because Plaintiffs' claims are unripe and

5  Plaintiffs lack standing to bring them.

6      For standing, Plaintiffs must allege that: (1) they suffered an injury in fact—an

7  invasion of a legally protected interest that is (a) concrete and particularized, and

8  (b) actual or imminent, not conjectural or hypothetical; (2) there is a causal

9  connection between the injury and the conduct complained of; and (3) it is likely, as

10  opposed to merely speculative, that the injury will be redressed by a favorable

11  decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Where an

12  allegation of injury is conjectural or hypothetical and not clean-cut and concrete,

13  concepts of standing and ripeness overlap and provide additional grounds for

14  dismissing an action.  *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).

15      Here, the FAC lacks any specific allegation that Plaintiffs' members have been

16  threatened with enforcement under the ABC Test or that the ABC Test has or will

17  imminently cause them injury.[4]  The FAC does not allege that any of Plaintiffs'

18  members have failed to treat as employees persons who should be treated as such

19  under the ABC Test.  Nor have Plaintiffs alleged that any of their members' actions

20  would fail the ABC Test, but would satisfy the *Borello* standard, which is the

21  analysis that would apply if this Court were to hold that the ABC Test cannot be

22  applied to franchisors.[5]

_____

23      [4] For example, Plaintiffs allege that an unspecified California Labor Code

24  provision "disrupt[s] the franchise commercial model" by "prohibit[ing] an
employer from compelling an employee to patronize his employer in the purchase

25  of anything of value," FAC ¶ 99, without any suggestion that the State—or
anyone—has sought to enforce this restriction against a franchisor.

26      [5] The only allegation of actual injury alleged in the FAC is the conclusory

27  allegation that "California's ABC Test causes Plaintiffs' members to bear legal,
administrative and operating costs to address the impact of the ABC Test on their

28  franchise systems and the interference with their contractual relations."  FAC ¶ 51.

13

Indeed, the FAC challenges the ABC Test on its face, without alleging any facts about any particular franchise relationship.  Yet, as the FAC illustrates, there is a wide variety of franchise relationships.  Franchisees may be individuals with no prior experience operating a business, "immense operations with tens of thousands of employees and hundreds of locations," or even public companies.  FAC ¶ 4. Franchisors may be solely in the business of franchising or may also directly offer the same services or products offered by their franchisees.  *See* 16 C.F.R. § 436.5(t) (requiring franchisors to disclose company-owned as well as franchised outlets); *An Overview of the Business and Law of Franchising*, Managing Legal Issues in Franchising, 2013 WL 3773409 (June 2013) (hereafter, "*Overview*").  Moreover, every franchise relationship is governed by contract, the terms of which may vary widely.  Thus, the question of whether any particular franchisor/franchisee relationship would be deemed an *employment* relationship under the ABC Test is highly fact-dependent, *Vasquez III*, 986 F.3d at 1122, and not something that can simply be presumed as a matter of law.

Indeed, in *Vasquez III*, the Ninth Circuit held that the ABC Test was the correct analysis for determining whether a franchisee should be deemed an employee under California law, but remanded for the district court to apply the ABC Test to the particular facts in that case.  *Id*.[6]  Here, there are no allegations of fact here showing that any particular franchisor would necessarily be deemed an employer under the ABC Test, and thus no alleged injury in fact.

Painting with an extremely broad brush, the FAC simply assumes that "[f]ranchising is fundamentally incompatible with the obligations that would be

_____

That could refer to nothing more than the expense attendant to the filing of this lawsuit, which is not an injury caused by Defendants.

[6] There, the franchisor employed a two-tiered system in which it entered into franchise agreements with "master franchisees," who in turn entered into franchise agreements with "unit franchisees," who provided janitorial cleaning services. Plaintiffs in that case were "unit franchisees," who claimed their status as franchisees was a "farce" and they were actually direct employees of the master franchisors.  *See id*. at 1112.

14

triggered if franchisees were deemed employees of franchisors under California's ABC Test."  FAC ¶ 99.  But that is simply a conclusion.  Likewise, the FAC suggests that any franchisor that avoids creating an employment relationship under the ABC Test will necessarily expose itself to a finding that it has abandoned its trademarks. FAC ¶ 25; *see id.* ¶¶ 24, 1, 34, 35, 67, 78, 92, 95-98.   But trademark abandonment is also a fact-dependent inquiry.  *See Hokto Kinoke Co. v. Concord Farms, Inc.*, 736 F.3d 1085, 1098 (9th Cir. 2013) (abandonment can occur when a trademark licensor "does not provide for the continued quality control of the goods and services sold under the mark, [in which case] the trademark may cease to function as a useful marker of the product's quality or source").  There are no allegations of fact permitting the Court to assess whether complying with the ABC Test would in fact force a franchisor to abandon its trademark(s) in any given situation, let alone that it would do so in all situations.

Plaintiffs are also asking the Court to assume how the State or the California courts will interpret Section 2775(b)(1) in the context of franchisor/franchisee relationships.  The original Complaint alleged, for example, that "the ABC Test, *if strictly interpreted*" would "convert[] all franchise relationships . . . into employment relationships." Complaint ¶ 19 (italics added).  In the FAC, Plaintiffs altered the wording to "if interpreted in accordance with its express terms," FAC ¶ 94, but the assumption remains.  Likewise, the FAC alleges:  "If a franchisor 'must maintain some control' and an independent contractor must be 'free from control,' then according to the ABC Test's express terms, franchise relationships are necessarily employment relationships."  FAC ¶ 30.  In a factual vacuum, Plaintiffs are asking the Court to assume that the "some control" a franchisor "must maintain" over its franchisee is, as a matter of law, incompatible with the franchisee being "free from the control and direction of the hiring entity in connection with the performance of the work" prong of the ABC Test.  Plaintiffs offer no explanation

1   how the control necessary for a franchise relationship is the same control that would

2   trigger an employment relationship.

3        And the Court cannot simply assume this because there is as yet no published

4   California case applying Section 2775(b)(1) to a franchisor/franchisee relationship.

5   Because Plaintiffs' claims are contingent on Section 2775(b)(1) being interpreted in

6   a particular way, they are unripe and should be dismissed, and if they are ripe, the

7   Court should abstain, as discussed in Section II below.  *See Voluntary Ass'n of*

8   *Religious Leaders, Churches & Orgs. v. Waihee*, 800 F. Supp. 882, 890-91 (D.

9   Haw. 1992) (holding that claim was not ripe where plaintiffs had not been

10  threatened with enforcement, and even if challenge was ripe, abstention would be

11  appropriate where there was no state case law interpreting the statute or its

12  exceptions).

13       One of the reasons why facial challenges are disfavored is that they "raise the

14  risk of premature interpretation of statutes on the basis of a factually barebones

15  record," and "run contrary to the fundamental principle of judicial restraint that

16  courts should neither anticipate a question of constitutional law in advance of the

17  necessity of deciding it nor formulate a rule of constitutional law broader than is

18  required by the precise facts to which it is to be applied."  *Wash. State Grange v.*

19  *Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (cleaned up).  This case is

20  a classic example of that; because the Complaint is devoid of allegations about any

21  particular franchise relationship, it is unsuited to a facial challenge.

22       In sum, the Complaint fails to satisfy the case or controversy requirement of

23  Article III and should be dismissed.[7]

24

25

26

27

28       [7]  Additional reasons why Plaintiffs lack standing to bring their Takings
Clause claim are discussed in Section I.E below.

16

### B.     Plaintiffs' Preemption Claims Fail.

#### 1.     The Franchise Rule Provides No Private Right of Action and Implicitly Precludes Private Enforcement.

##### a.     The FTC Act provides no private right of action.

Plaintiffs' claim of Franchise Rule preemption fails at the threshold because there is no private right of action under the FTC Act or the Franchise Rule.  The Supremacy Clause creates a rule of decision, it is not the source of any federal rights.  *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1479 (2018); *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 324 (2015).  *See Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (holding "[t]here is no federal preemption *in vacuo*").  Thus, the Supremacy Clause does not provide a private cause of action where an underlying statute does not provide one.  Here, the FTC Act does not provide a private cause of action.  *Dreisbach v. Murphy*, 658 F.2d 720, 730 (9th Cir. 1981).  The FTC Act vests remedial power solely in the Federal Trade Commission.  *Id.*; *see* 15 U.S.C. §§ 45-58.  The Franchise Rule itself is also clear that it grants no private right of action.  *See* 16 C.F.R. § 436.6.  Thus, Plaintiffs' claim of Franchise Rule preemption fails for the simple reason that there is no private right of action to enforce it.

##### b.     The FTC Act and Franchise Rule implicitly preclude private enforcement.

The FAC attempts to remedy the lack of a private right of action under the Franchise Rule by citing *Armstrong*, *v. Exceptional Child Ctr.*, 575 U.S. 320, for the proposition that the "Court has equitable authority to grant relief from state enactments that are preempted by federal law." FAC ¶ 115.  But the *Armstrong* Court rejected that argument under analogous facts, explaining that "[c]ourts of equity can no more disregard statutory and constitutional requirements and provisions than can courts of law."  575 U.S. at 327 (cleaned up).  The Supreme Court held that the Medicaid Act at issue in that case "implicitly precludes private

17

enforcement of [the statute at issue], and respondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." *Id*. It explained that the "express provision of one method of enforcing a substantive right suggests that Congress intended to preclude others." *Id*. Here, the FTC Act explicitly provides for enforcement only by the Commission, precluding Plaintiffs' equitable powers argument.

### 2. The ABC Test Is Not Preempted.

Plaintiffs' preemption theories also fail as a matter of law. As discussed below, a strong presumption against preemption applies here, and Plaintiffs fail to allege any facts that overcome the presumption.

The FAC alleges that the ABC Test is preempted because it conflicts with the Franchise Rule and the Lanham Act. FAC ¶¶ 92, 94.[8] Conflict preemption is found only "where compliance with both state and federal law is impossible, or [] where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Knox v. Brnovich*, 907 F.3d at 1175. Here, Plaintiffs do not allege that it is impossible to comply with both the ABC Test and federal law. Instead, Plaintiffs limit their claim to the argument that the ABC Test "is an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." FAC ¶¶ 35, 92, 94, 98.

A "high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *In re Volkswagen "Clean Diesel" Marketing*

---

[8] The FAC does not allege that the ABC Test is expressly preempted by the Franchise Rule, and it plainly is not. 15 U.S.C. §§ 41-58. *See* Bus. Franchise Guide (CCH), ¶ 6067 H. *Sections 346.10 and 436.11: Other Laws and Severability*, 2015 WL 6838253 (2018) ("The Federal Trade Commission Act does not include any clause directly preempting state law or authorizing the Commission to do so."). The Lanham Act also contains no express preemption provision. *See* Section IV(A) below. The FAC also does not allege field preemption, *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. at 1480, and nothing in the Franchise Rule or the Lanham Act suggests that field preemption could apply. Indeed, the Franchise Rule has an express provision that disclaims any intent to occupy the field, 16 C.F.R. § 436.10(b). *See* Bus. Franchise Guide (CCH), ¶ 6067 H. *Sections 346.10 and 436.11: Other Laws and Severability*, 2015 WL 6838253 (2018).

18

1    *Sales Practices & Products Liability Litig.*, 959 F.3d 1201, 1205 (9th Cir. 2020).

2    Conflict preemption cannot "be based on a freewheeling judicial inquiry into

3    whether a state statute is in tension with federal objectives." *Kansas v. Garcia*, 140

4    S. Ct. at 801.  Rather, to assess a claim based on "obstacle preemption," "a court

5    must identify the 'full purposes and objectives' of the federal law from 'the text and

6    structure of the statute at issue.'" *Volkswagen "Clean Diesel"*, 959 F.3d at 1212

7    (quoting *Kansas v. Garcia*, 140 S. Ct. at 804).

8         Further, a preemption analysis starts "with the basic assumption that Congress

9    did not intend to displace state law, and that federal law does not supersede the

10   historic police powers of the States unless that was the clear and manifest purpose

11   of Congress." *Knox v. Brnovich,* 907 F.3d at 1173-74 (cleaned up).  "When a state

12   regulates an area of historic state power," the presumption applies, even if the state

13   law "touches on an area of significant federal presence." *Id.* at 1174 (cleaned up).

14   States have traditionally regulated the employment relationship generally and the

15   payment of wages in particular. *Mass. v. Morash*, 490 U.S. 107, 118 (1989).

16   Importantly, in *California Trucking Ass'n v. Bonta*, ___ F.3d ___, No. 20-55106,

17   2021 WL 1656286, at * 5, *12 n.14 (Apr. 28, 2021), the Ninth Circuit held that the

18   presumption against preemption applied to the ABC Test, just as it had earlier held

19   that the presumption applied to the *Borello* test in *California Trucking Ass'n v. Su,*

20   903 F.3d 953, 961 (9th Cir. 2018).

21                    **a.    The ABC Test is not preempted by the Franchise Rule.**

22        Against this backdrop, the ABC Test is not preempted by the Franchise Rule,

23   because there is no conflict between it and the ABC Test.  Neither the FTC Act nor

24   the Franchise Rule creates any substantive rights respecting the

25   franchisor/franchisee relationship.  The Franchise Rule only requires franchisors to

26   make certain disclosures to potential franchisees before binding them to a franchise

27   agreement.  16 CFR §§ 436.1-436.11.  The Rule's definitions of "franchise,"

28   "franchisor," and "franchisee," *id*. § 436.1(h)(1), (i), (k), are not intended to grant

19

any rights, as Plaintiffs imply, FAC ¶ 17, but simply to identify which persons and

relationships are subject to the provisions of the Rule.  Indeed, in 2004 the FTC

declined requests by franchisee advocates that the Franchise Rule be revised to

govern the substantive terms of franchisor/franchisee relationships.  *Highlights*,

*supra*, ¶ 12,881.  The purpose of the FTC Act is protection of consumers and others

from "[u]nfair methods of competition in or affecting commerce, and unfair and

deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1)(2).  The

Franchise Rule, like California's Franchise Investment Act, was *not* intended to

provide special status or protections to franchisors, but rather to address fraud in the

franchise marketplace:

> [T]housands upon thousands of individuals lost their life savings to illegitimate, often criminal and almost always phony franchisors who moved from city to city selling phantom franchises through high-pressure sales techniques, slick brochures, and outright fraud. Even our nation's most legitimate franchisors found it difficult to sell franchises. The situation had become so bad that the words "franchise" and "fraud" became synonymous to many people.
>
> In response, first certain key states and then the federal government enacted a series of laws and regulations in the 1970s designed to stamp out fraud in the franchise marketplace and protect franchisees from perceived abuse.

*Overview*, *supra*, 2013 WL 3773409.  This is consistent with the Franchise Rule's

express provision that it is *not* intended to preempt state laws that are more

protective of franchisees.  16 C.F.R. § 436.10(b).  In short, there is no conflict

preemption because the Franchise Rule is not intended to protect franchisors from

complying with state wage and hour laws.

The Ninth Circuit's decisions in *Bonta* and *Su* should foreclose any argument

that the ABC Test is preempted by the Franchise Rule.  In *Bonta*, the Ninth Circuit

held that the Federal Aviation Administration Authorization Act ("FAAAA") does

not preempt the ABC Test, notwithstanding that the FAAAA contains an *express*

*provision* preempting any state law "related to a price, route, or service of any

motor carrier . . . with respect to the transportation of property." 2021 WL 1656286,

20

at *5, *9.  In *Su*, the Court held that the FAAAA did not preempt the *Borello* standard.  903 F.3d at 960-61.  In so holding, the Ninth Circuit observed:  "[T]he scope of preemption must be tempered by the presumption against the pre-emption of state police power regulations.  To this end, we have held that Congress did not intend to preempt laws that implement California's traditional labor protections powers, and which affect carrier's rates, routes or services in only tenuous ways."  *Id.* at 961 (quotation marks and citations omitted).  The Court held that "Congress did not intend to hinder States from imposing normative policies on motor carriers as employers."  *Id.* at 963.

Here, too, there is no reason whatsoever to conclude that, in enacting the FTC Act to combat "unfair and deceptive acts or practices in or affecting commerce," Congress intended to prevent California from imposing its normative labor policies on franchisors—*who are not even mentioned* in the FTC Act itself.  *See* 15 U.S.C. §§ 41-58.  Nor does the Franchise Rule itself evince any intent to preempt state labor laws, even assuming that the FTC has statutory authority to preempt such laws by regulation.  *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ("[A] federal agency may pre-empt state law only when and if it is acting within the scope of its congressionally delegated authority"); *accord N.Y. v. FERC*, 535 U.S. 1, 18 (2002).

Finally, in *Vasquez III*, the Ninth Circuit held that the *Dynamex* ABC Test applied to a franchisor/franchisee relationship, despite the fact that IFA, one of the Plaintiffs here, appeared as amicus in the case and "rail[ed] against applying the ABC Test," arguing that it "would sound the death knell for Franchising in California" and have "profound importance . . . for the national economies"—just as the FAC does here.  986 F.3d at 1110.  While the precise issue of preemption is not addressed in *Vasquez III*, the Court rejected the notion, which permeates the FAC, that the basic nature of the franchise relationship is such that franchisors should be exempt from having to satisfy the ABC Test.  *See id.* at 1124 (dismissing

21

the "general policy arguments" raised by the IFA and concluding that "the franchise context does not alter the *Dynamex* analysis").[9]  Similarly, in *Bonta*, the Ninth Circuit rejected arguments made by a motor carrier trade association that the ABC test should not apply to motor carriers because it "would preclude the business model employed by [its] members," and require them "to use employees rather than independent contractors as drivers," causing massive disruption that was likely to "put small motor carriers out of business and force other motor carriers to leave California."  *See* 2021 WL 1656286, at *3, *9.  The reasoning of these decisions compels dismissal here.

> ### b.   The ABC Test is not preempted by the Lanham Act.
>
> #### (1)   Plaintiffs' Lanham Act preemption claim fails as matter of law under *IFA v. Seattle*.

Plaintiffs' claim of Lanham Act preemption is equally flimsy and has already been rejected by the Ninth Circuit in a case brought by Plaintiff IFA challenging Seattle's minimum wage ordinance, *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389 (9th Cir. 2015) ("*IFA v. Seattle*").  In that case, IFA argued that the ordinance, which classified franchisees affiliated with large networks as "large employers" that became subject to minimum wage increases on a faster schedule than "small employers," was preempted by the Lanham Act.  *Id*. at 397-98. Although *IFA v. Seattle* was decided in the context of an appeal from an order

---

[9] The FAC heavily relies on *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474 (2014), a case involving whether a franchisor was liable for the tortious conduct of its franchisee.  *See* FAC ¶¶ 2, 16, 20, 26, 28, 33, 60-61, 66-67, 69, 78, 89, 99-100, 120.  The Ninth Circuit in *Vasquez III* expressly concluded that *Patterson* "has no application to the ABC test," notwithstanding the *Patterson* court's "extensive dicta about the 'special features of the franchise relationship'." 986 F.3d at 1122-23.  In dismissing the parties' policy arguments, the Court noted that those arguments "would apply just as much in Massachusetts, where courts have routinely applied the codified ABC test to franchises (and have routinely held against franchisors)."  *Id*. at 1124.  The California Supreme Court likewise has concluded that *Patterson* is *irrelevant* to determining whether a worker should be classified as an employee or an independent contractor. *Vasquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 955 n.3 (2021) ("*Vasquez II*").

22

denying a preliminary injunction, the Ninth Circuit squarely concluded that, as a matter of law, the Seattle ordinance was not preempted by the Lanham Act.  803 F.3d at 409.  The result should be the same here.

The Ninth Circuit observed that the Lanham Act "does not discuss the regulation of wages or employment conditions or establish that classifications based on trademark use are impermissible." *Id.*[10]  Rather, the purpose of the Lanham Act is more narrowly focused:

> The purpose underlying any trade-mark statute is twofold. One is to protect the public so it may be confident that ... it will get the product which it asks for and wants to get. Secondly, where the owner of a trade-mark has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its misappropriation by pirates and cheats.

*Id.* (quoting S. Rep No. 79-1333 as 1274).

The Ninth Circuit also considered other court decisions that addressed whether state regulation "affecting—but not directly regulating—trademarks are preempted," including *Mariniello v. Shell Oil Co.*, 511 F.3d 853, 858 (3d Cir. 1975); *State v. Frampton*, 737 P.2d 183, 191 (Utah 1987); and *Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980)—each of which rejected a claim of Lanham Act preemption.  *IFA v. Seattle*, 803 F.3d at 409-10.  The Court held that the ordinance "does not interfere with a franchise's ability to maintain quality, compromise the public's confidence in trademarks, allow misappropriation, or directly interfere with or regulate marks.  Thus, the ordinance is not preempted by the statute." *Id.* at 410.

In reaching this holding, the Ninth Circuit emphasized the strong presumption "that the historic police powers of the State were not to be superseded by the

---

[10] In *IFA v. Seattle*, the plaintiff did "not indicate which provision of the Lanham Act preempts the ordinance, apart from a general purposive statement in the Act that it is designed to protect registered trademarks used in such commerce from interference by State, or territorial legislation."  803 F.3d at 409 (cleaned up). The same is true about the FAC.  FAC ¶¶ 35, 95.

23

1  Federal Act unless that was the clear and manifest purpose of Congress," and the

2  fact that the challenged regulation was in "a field of traditional state regulation,

3  minimum wages to be paid to employees, and the text of the Lanham Act does not

4  indicate an intent to preempt such an ordinance." *Id.*

5      Here, too, the ABC Test is an exercise of the historic police powers of the

6  State in a field traditionally regulated by the State—employee wages and hours.

7  Even if application of the ABC Test to some franchisees would require them to be

8  treated as employees, that would plainly "not interfere with a franchise's ability to

9  maintain quality, compromise the public's confidence in trademarks, allow

10 misappropriation, or directly interfere with or regulate marks." *Id. IFA v. Seattle*

11 compels the conclusion that Plaintiffs' Lanham Act preemption claim fails as a

12 matter of law.

13               **(2)   The ABC Test does not inevitably require**
                        **franchisors to abandon their trademarks.**
14

15     Plaintiffs further allege that, in order to avoid liability as employers under the

16 ABC Test, they must necessarily abandon their trademarks, thus thwarting the

17 purposes of the Lanham Act, which protects the rights of trademark holders. *See*

18 FAC ¶¶ 17, 3-24, 69, 72-75. This "trademark abandonment" theory is particularly

19 tenuous and should also be rejected as a matter of law.

20     A trademark holder, including a franchisor, may grant a license of its

21 trademarks without losing its trademark protection, provided that it maintains

22 sufficient quality control over the goods and services sold under the trademark.

23 *Barcamerica Int'l, USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 595-96 (9th

24 Cir. 2002). "[U]ncontrolled or 'naked' licensing may result in the trademark

25 ceasing to function as a symbol or quality and controlled source." *Id.* at 596

26 (citation omitted). The argument that the ABC Test is impliedly preempted by this

27 scheme fails for several reasons.

28

First, like the Franchise Rule, nothing in the Lanham Act creates a right to have a franchise.  The Lanham Act regulates the conditions under which one may validly license a trademark, but a trademark holder need not enter into a franchise agreement in order to license its trademark.  Nothing in the Lanham Act affords any rights to franchise relationships as such, and it does not purport to protect any particular business model.  Consequently, the Lanham Act is irrelevant to the FAC's argument that franchising is fundamentally incompatible with the ABC Test.  FAC ¶ 99.

Second, the ABC Test does not require franchisors to take any particular action with respect to their trademarks.  Franchisors can exercise however much control they deem appropriate.  *IFA v. Seattle*, 803 F.3d at 410.   In some circumstances, the use of particular controls may give rise to a finding that they have created an employment relationship, but the ABC Test does not directly regulate franchisors' trademarks.

Third, the only portion of the ABC Test that even indirectly affects a franchisor's ability to protect its trademark is the "A" prong:

> (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.

Cal. Labor Code § 2775(b)(1)(A).  Yet the California Labor Code further provides that, in the event that the ABC Test is found to be inapplicable for any reason, the *Borello* standard—which also considers control—shall be applied.  *Id.* § 2775(b)(3).  Plaintiffs have not alleged that *Borello* would be preempted by the Lanham Act, and in fact allege that is the test that should be applied to franchise relationships.  FAC ¶ 128.  They fail to explain why "control" under the ABC test results in preemption, while "control" under *Borello* does not.[11]

---

[11] The FAC suggests that under *Borello* "the fact that the parties have signed a commercial agreement that governs their relationship might be the determinative factor," FAC ¶ 29, but that is patently incorrect.  *See Dynamex*, 4 Cal. 4th at 962

1         Finally, Plaintiffs' theory erroneously equates the "quality control"

2    requirement for preserving a trademark with the "control and direction"

3    requirement of the ABC Test.  The rationale for the naked license theory is that

4    where a trademark licensor "does not provide for the continued quality control of

5    the goods and services sold under the mark, the trademark may cease to function as

6    a useful marker of the product's quality or source." *Hokto Kinoke Co. v. Concord*

7    *Farms, Inc.*, 736 F.3d at 1098.  That is an inherently factual determination that

8    depends on the particular circumstances of the license and the nature of the

9    trademarked goods or services.  *See Edwin K. Williams & Co v. Edwin K. Williams*

10   *&Co.-East*, 542 F.2d 1053, 1059-60 (9th Cir. 1976) (finding sufficient control in

11   bookkeeping services license where licensor knew licensee was competent and well

12   acquainted with the bookkeeping service).  Nothing in the Lanham Act requires that

13   a trademark holder exercise "control and direction . . . in connection with the

14   performance of" work done by the licensee as the ABC Test states.  *See* Cal. Labor

15   Code § 2775(b)(1)(A).

16        Indeed, the degree of control a trademark licensor must exercise to avoid

17   abandonment is quite low.  To avoid abandonment, it is not necessary, for example,

18   that there be a formal quality control provision in the license, "where the particular

19   circumstances of the licensing arrangement suggest the public will not be

20   deceived." *Hokto Kinoke Co.*, 736 F.3d at 1098.  "Perfection or even proficiency is

21   not the standard," rather, "a quality control program need only [receive] a passing

22   grade of 'C'." *Bluetooth SIG, Inc. v. FC US LLC*, 463 F. Supp. 3d 1169, 192 (N.C.

23   Cal. 2020) (quotation marks and citations omitted).  Moreover, a determination that

24   a trademark has been abandoned through naked licensing is a forfeiture, and "the

25   proponent of a naked license theory faces a stringent standard of proof."

26   ————————————

27   (noting that under *Borello*, as well as "all of the varied standards . . . for
     distinguishing employees and independent contractors," an employer cannot

28   determine a worker's status by using a contract that labels the employee as such).

26

1   *Barcamerica Int'l. USA Trust v. Tyfield Importers, Inc.*, 289 F.3d at 596 (quotation

2   marks and citation omitted).  Here, Plaintiffs do not and cannot allege facts that

3   would support a categorical determination that franchisors cannot protect their

4   trademarks and at the same time avoid liability as employers under the ABC Test.

5   Plaintiffs' preemption theory presents a false choice.

6       **C.   Plaintiffs' Dormant Commerce Clause Claim Fails.**

7           **1.   The ABC Test Is Not Protectionist or Discriminatory.**

8         The primary purpose of the dormant Commerce Clause is to safeguard against

9   state protectionism.  *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, ___ U.S. ___,

10  139 S. Ct. 2249, 2461 (2019).  To determine whether a law violates the dormant

11  Commerce Clause, a court "first ask[s] whether it discriminates on its face against

12  interstate commerce.  In this context, 'discrimination' simply means differential

13  treatment of in-state and out-of-state economic interests, that benefits the former

14  and burdens the latter."  *United Haulers Ass'n v. Oneida-Herkimer Solid Waste*

15  *Mgt. Auth.*, 550 U.S. 330, 338 (2007) (citations omitted).  *See Ward v. United*

16  *Airlines*, 986 F.3d 1234, 1239 (9th Cir. 2021).  The ABC Test does not favor

17  California products or citizens, but is a wage and hour regulation that applies to *all*

18  employers who have employees in the State.  *See Ward v. United Airlines*, 986 F.3d

19  at 1240 (holding that California labor statute was "non-discriminatory because it

20  imposes burdens on private employers evenhandedly, whether they are based in-

21  state or out-of-state").  *Accord Pharm. Research & Mfrs. of Am. v. Cty. of Alameda*,

22  768 F.3d 1037, 1042 (9th Cir. 2014) (holding that ordinance that both on its face

23  and in effect applied to all manufacturers that make their drugs available in the

24  county was not discriminatory); *Ass'n des Eleveurs de Canards et d'Oies du*

25  *Quebec v. Harris*, 729 F.3d 937, 948 (9th Cir. 2013) (holding that statute that

26  barred sale of both intrastate and interstate products that are the result of force

27  feeding a bird did not discriminate in violation of the Commerce Clause).

28

Like the minimum wage ordinance in *IFA v. Seattle*, the ABC Test "does not classify employers based on the location of their headquarters, the location of their workers, or the extent to which they participate in interstate commerce." 803 F.3d at 400. Indeed, that ordinance treated franchises differently from other businesses. *Id.* at 397-98. Nonetheless, the Court rejected IFA's argument that the ordinance facially discriminated against franchises in violation of the dormant Commerce Clause, stating that "[a] distinction drawn based on a firm's business model—a characteristic IFA contends is highly correlated with interstate commerce—does not constitute facial discrimination against out of state entities or interstate commerce." *Id.* at 400. Here, IFA's claim is even weaker, because it is not complaining that franchises are classified differently from other businesses, but rather that *franchises should be classified differently and more favorably than other businesses.*

Indeed, another California federal district court has considered and rejected a dormant Commerce Clause challenge to the ABC Test. *Western States Trucking Ass'n v. Schoorl*, 377 F. Supp. 3d 1056, 1073-74 (E.D. Cal. 2019). In *Schoorl*, the court granted defendant's motion to dismiss, concluding that the complaint did not plausibly state a claim under the dormant Commerce Clause. *Id.* at 1074.

> As Defendants point out, California's wage orders do not facially discriminate against interstate commerce but instead set out generally applicable requirements that apply equally to in-state, multi-state, and out-of-state employers within California. *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525 (9th Cir. 2009) (finding no discriminatory effect where state law treats in-state and out of state entities the same). . . . Significantly, as Defendants note, Western States cites no provision of either California's wage orders or of the *Dynamex* decision that differentiates between in-state and out-of-state commerce. Indeed, as the court in *Yoder v. Western Express, Inc.* noted, there is no evidence that California's wage and hour laws operate "in practice as anything other than an unobjectionable exercise of the State's police power." 181 F. Supp. 3d 704, 723 (C.D. Cal. 2015).

*Id.* at 1074 (cleaned up).

### 2. The ABC Test Does Not Directly Regulate Interstate Commerce.

A statute also may constitute a per se violation of the dormant Commerce Clause when it directly regulates interstate commerce. *Pharm. Research & Mfrs. of Am.*, 768 F.3d at 1043. The FAC does not and could not allege that the ABC Test directly regulates interstate commerce, since the law does not control conduct of employers that operate "entirely outside the state's borders." *Id.* "[T]here is nothing unusual or unconstitutional per se about a state or county regulating the in-state conduct of an out-of-state entity when the out-of-state entity chooses to engage the state or county through interstate commerce." *Id.* at 1043-44.[12]

### 3. As a Matter of Law, the ABC Test Does Not Significantly Burden Interstate Commerce.

The FAC alleges that the ABC Test as applied to franchises violates the dormant Commerce Clause under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). FAC ¶¶ 101-102.[13] But "non-discriminatory laws that have only incidental effects on interstate commerce will generally be upheld 'unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Ward v. United Airlines*, 986 F.3d 1234, 1239 (9th Cir. 2021) (quoting *Pike*, 397 U.S. at 142. As a matter of law Plaintiffs' *Pike* challenge fails.

The Courts have rarely invalidated non-discriminatory statutes on Dormant Commerce Clause grounds. Indeed, "only a small number of [Supreme Court] cases invalidating laws under the dormant Commerce Clause have involved laws that were genuinely nondiscriminatory, in the sense that they did not impose disparate treatment on similarly situated in-state and out-of-state interests." *Nat'l*

---

[12] Nothing in the FAC suggests that the ABC Test conflicts with the regulatory regimes of any states that may choose to adopt analogous laws. *See Ass'n des Eleveurs de Canards*, 729 F.3d at 951.

[13] Plaintiffs also appear to rely on dicta in *Patterson*, 60 Cal. 4th 474. FAC ¶¶ 100, 120. As noted above, *Patterson* is irrelevant to application of the ABC Test. *Vasquez III*, 986 F.3d at 1123. *Accord Vasquez II*, 10 Cal. 5th at 955 n.3.

29

1   *Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1150 (9th Cir. 2012).

2   *See Chinatown Neighborhood Ass'n v. Harris*, 794 F.3d 1136, 1146 (9th Cir. 2015).

3   Those cases involve "regulation of activities that are inherently national or require a

4   uniform system of regulation." *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146.

5   *See Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1148; *Ass'n des Eleveurs*

6   *de Canards*, 729 F.3d at 952. The only examples that the Ninth Circuit has

7   recognized that require a uniform system of regulation are transportation and

8   professional sports leagues. *Chinatown Neighborhood Ass'n*, 794 F.3d at 1146-47;

9   *Ass'n des Eleveurs de Canards*, 729 F.3d at 952. Franchising is not inherently

10  national in character and is in fact extensively regulated at the state level, as the

11  FAC concedes. *See* FAC ¶ 24, 72-73; 20A Am. Jur. Pl. & Pr. Forms Private

12  Franchise Contracts § 1 (Sept. 2020 Update); *Highlights*, *supra*, ¶ 12,881.

13          The crux of Plaintiffs' complaint is that the ABC Test impairs their members'

14  ability to use the franchise business model to closely control the ultimate product or

15  service offered. *See* FAC ¶¶ 20-22, 27. This theory lacks merit because the

16  Commerce Clause does not protect particular business models or other methods of

17  operation. *Nat'l Ass'n of Optometrists & Opticians*, 682 F.3d at 1151 (rejecting

18  challenge to statute prohibiting opticians from offering prescription eyewear at the

19  same location where eye examinations were provided); *Exxon Corp. v. Governor of*

20  *Md.*, 437 U.S. 117, 127 (1978) (holding that the dormant Commerce Clause does

21  not protect "the particular structure or methods of operation in a retail market");

22  *Ass'n des Eleveurs de Canards*, 729 F.3d at 949 (holding that "the dormant

23  Commerce Clause does not ... guarantee Plaintiffs their preferred method of

24  operation."). As the Ninth Circuit in *National Ass'n of Optometrists & Opticians*

25  noted, "[c]ountless non-discriminatory regulations affect the ability of some out-of-

26  state entities to compete, but that does not necessarily mean those regulations

27  impose a significant burden on interstate commerce." 682 F.3d at 1151 n.8.

28  *Accord Chinatown Neighborhood Ass'n*, 794 F.3d at 1145 ("[E]ven when state law

30

1   has significant extraterritorial effects, it passes Commerce Clause muster when, as

2   here, these effects result from the regulation of in-state conduct").

3       Indeed, the court in *Schoorl* rejected an argument—that the ABC Test imposes

4   an excessive burden on interstate commerce because it "invalidates the use of

5   independent contractors"—that is very similar to Plaintiffs' claim here.  *See* 377 F.

6   Supp. 3d at 1074.  The court held that the "California's wage orders do not prohibit

7   the use of such drivers; instead they simply provide a framework for establishing

8   whether a given individual should be deemed an employee or an independent

9   contractor."  *Id*.  Here, too, nothing prohibits the use of franchises or independent

10   contractors; the ABC Test simply provides a framework for establishing when an

11   individual franchisee should be deemed an employee or an independent

12   contractor.[14]

13       Plaintiffs confuse burden on their members with burden on interstate

14   commerce.  Even if some franchisors decided not to enter or remain in the

15   California market, as the FAC vaguely alleges at paragraph 112, there is "no reason

16   to assume that their share" of the California market will not promptly be replaced.

17   *National Ass'n of Optometrists & Opticians* at 1151.  In *Exxon*, the Supreme Court

18   explained:  "The source of the consumers' supply may switch from company-

19   operated stations to independent dealers, but interstate commerce is not subjected to

20   an impermissible burden simply because an otherwise valid regulation causes some

21   business to shift from one interstate supplier to another."  437 U.S. at 127.  Thus,

22   even if the ABC Test caused a shift in the market, causing franchise operations to

23

24

—————————————————

25       [14] Where, as here, there is no substantial burden on interstate commerce, the
court need not address the "clearly excessive in relation to the putative local

26   benefits" portion of the *Pike* test.  *Nat'l Ass'n of Optometrists & Opticians*, 682
F.3d at 1155-56 ("Because the challenged laws are not discriminatory and do not

27   impose a significant burden on interstate commerce it would be inappropriate for us
to determine the constitutionality of the challenged law based on our assessment of

28   the benefits of those laws and the State's wisdom in adopting them").

31

1  lose sales to competitors—and no such effect has even been alleged by Plaintiffs—

2  that would not constitute a dormant Commerce Clause violation.

3      **D.   Plaintiffs' Claim Seeking a Declaration Interpreting California**
       **Labor Code Section 2775 Fails.**

4

5      Plaintiffs' third claim seeking a declaration interpreting California Labor Code

6  section 2775 also fails as a matter of law.  First, it plainly seeks an improper

7  advisory opinion, as discussed in Section I.A. above.  Second, to the extent it is not

8  simply duplicative of Plaintiffs' (meritless) Supremacy Clause claims, it is barred

9  by the Eleventh Amendment.  The Eleventh Amendment bars suits against a state in

10  federal court for all types of legal or equitable relief in the absence of consent by

11  the state or abrogation of that immunity by Congress.  *Coll. Sav. Bank v. Fla.*

12  *Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Pennhurst*

13  *State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted).

14  "The Eleventh Amendment [also] bars a suit against state officials when 'the state

15  is the real, substantial party in interest.'"  *Pennhurst*, 465 U.S. at 101 (citation

16  omitted).  "And, as when the State itself is named as the defendant, a suit against

17  state officials that is in fact a suit against a State is barred regardless of whether it

18  seeks damages or injunctive relief."  *Id.* at 101-02.  Here, any judgment entered in

19  this facial challenge to Labor Code section 2774 would operate against the State.

20      In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a

21  limited exception to Eleventh Amendment immunity.  However, the exception only

22  allows "suits for prospective declaratory and injunctive relief against state officers,

23  sued in their official capacities, to enjoin an alleged ongoing violation of *federal*

24  *law*."  *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th

25  Cir. 2000) (emphasis added).  The *Ex parte Young* exception does not cover

26

27

28

32

1    Plaintiffs' Third Claim, which asks the Court to construe and harmonize *state* law.

2    *Doe v. Regents of Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018).[15]

3        **E.    Plaintiffs' Takings Claim Fails.**

4        For several reasons, Plaintiffs' Fourth Claim, under the Takings Clauses of the

5    Fifth and Fourteenth Amendments, fails as a matter of law.

6                **1.    The Court Lacks Subject Matter Jurisdiction Over
                        Plaintiffs' Takings Claim.**

7

8        As an initial matter, Plaintiffs' Takings Clause claim seeks only declaratory

9    and injunctive relief, which are not available on a takings claim.  *See* FAC Prayer.

10   As long as adequate provision for obtaining just compensation exists, the sole

11   remedy for a government taking is compensation, not injunctive or declaratory

12   relief.  *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176-77 (2019).  California

13   provides adequate compensation remedies for a taking.  *See, e.g., Hensler v. City of*

14   *Glendale*, 9 Cal. 4th 1, 13-14 (1994) (describing the California state remedies

15   available to address a takings claim).  And to the extent Plaintiffs' Takings Claim

16   could be construed as a claim for damages, Plaintiffs lack standing.  Plaintiffs are

17   associations, and do not have standing to seek compensation for injuries suffered by

18   their members, because those members' participation in such a claim is necessary.

19   *United Food Workers & Commercial Workers Local 751 v. Brown Group, Inc.*, 517

20   U.S. 544, 546(1996) (recognizing the general rule that "an association's action for

21   damages running solely to its members would be barred for want of the

22   association's standing to sue"); *Rocky Mountain Farmers Union v. Corey*, 913 F.3d

23   940, 950 (9th Cir. 2019) (to the same effect).[16]

24

25        [15] Even if the Eleventh Amendment were not applicable, the Court should
     decline to exercise supplemental jurisdiction over this state law claim.  *See Mfd.*
26   *Home Cmtys, Inc. v. City of San Jose*, 420 F.3d 1022, 1034 (9th Cir. 2005).

27        [16] To recover on a claim, each of Plaintiffs' members would bear the burden
     of proving an actual loss and establish damages with reasonable certainty.  *See*
28   *Gadsden Indus. Park, LLC v. United States*, 956 F.3d 1362, 1371 (Fed. Cir. 2020).

                                        33

1    Plaintiffs' claim is also unripe.  A takings claim arises only when property has

2    been taken.  The FAC is devoid of allegations suggesting that any member has been

3    found to have abandoned its trademark due to its compliance with the ABC Test, or

4    that the State has taken any final action depriving any of Plaintiffs' members of any

5    property rights.  Thus, Plaintiffs' takings claim is, at best, speculative and unripe.

6    *See Pakdel v. City & Cty. of S.F.*, 952 F.3d 1157, 1163 (9th Cir. 2020).

7    **2.    The Eleventh Amendment Bars Plaintiffs' Takings Claim.**

8    Finally, even if Plaintiffs could satisfy Article III standing, their takings claim

9    would still be barred by the Eleventh Amendment.  It is settled that a federal court

10   may not entertain a Takings Clause action against a state or state officials in their

11   official capacities.  *Jachetta v. United States*, 653 F.3d 898, 909-10 (9th Cir. 2011);

12   *Seven Up Pete Venture v. Schweitzer*, 528 F.3d 948 (9th Cir. 2008) (rejecting

13   contention that Takings Clause overrides Eleventh Amendment immunity).  *See

14   Ladd v. Marchbanks*, 971 F.3d 574, 578-81 (6th Cir. 2020) (holding that Eleventh

15   Amendment barred property owners' takings claim for damages and declaratory

16   relief).  Thus, even if Plaintiffs had standing to assert a takings claim, this court

17   cannot grant them relief; their claim would have to be presented to a state court.

18   *See, e.g., Hensler v. City of Glendale*, 9 Cal. 4th at 13-14.

19   **3.    On the Merits, Plaintiffs' Taking Claim Fails.**

20   Even if Plaintiffs could overcome their clear lack of standing and the bar of

21   the Eleventh Amendment, their takings claim would fail on the merits.  Although

22   there is "no litmus test" for an alleged regulatory taking, in determining whether a

23   taking has occurred, the courts determine whether there are "regulatory actions that

24   are functionally equivalent to the classic taking in which government directly

25   appropriates private property or ousts the owners from his domain."  *Bridge Aina

26   Le-a, LLC v. Land Use Comm'n*, 950 F.3d 610, 631 (9th Cir. 2020).  Plaintiffs fail

27   to allege anything approaching a classic taking.  Plaintiffs simply do not want to

28   follow the same rules as other businesses; as in *IFA v. Seattle* (and other cases),

34

they contend that the franchise business model is special, and that they should be exempted from generally applicable legal doctrines, here wage and hour rules.  That is not a "taking."

### F.   Plaintiffs' Claim for Injunctive Relief Adds Nothing.

Plaintiffs' Fifth Claim does not allege a separate claim, but instead simply requests the remedy of an injunction.  FAC ¶¶ 135-141.  As such, it fails for the same reasons that Plaintiffs' other claims fail.

### G.   Amendment of the Complaint Would Be Futile.

Plaintiffs' claims fail as a matter of law.  And, because "it is clear that the [C]omplaint could not be saved by an amendment," *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d at 946, and Plaintiffs have already amended once, the Court should not grant Plaintiffs leave to amend a second time.

## II.   ALTERNATIVELY, THE COURT SHOULD ABSTAIN.

As discussed above, the Court should dismiss the FAC.  But if the Court were to conclude otherwise, it should exercise its discretion to abstain under the doctrine enunciated in *Railroad Commission v. Pullman Co.*, 312 U.S. 496.[17]

The *Pullman* abstention doctrine is "based on the avoidance of needless friction between federal pronouncements and state policies."  *Courtney v. Goltz*, 736 F.3d 1152, 1162 (9th Cir. 2013) (citation omitted).  "It vests federal courts with discretion to abstain from adjudicating disputes that hinge on significant and unsettled questions of state law."  *Id*. at 1162-63 (footnote omitted).  *Pullman* abstention is an appropriate course when three requirements are met:

> (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the possible determinative issue of state law is uncertain.

*Id*. at 1162 (citation omitted).

---

[17] Under *Pullman*, a stay rather than dismissal, is appropriate.  *Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d 876, 888 n.12 (9th Cir. 2011).

35

The requirements for *Pullman* abstention are met here.  First, the ABC Test governs wages and employee benefits, a sensitive area of social policy traditionally within the police powers of the states.  *IFA v. Seattle*, 803 F.3d at 410; *Su*, 903 F.3d at 961.  Second, a state court ruling that the ABC Test does not apply to franchise relationships would render it unnecessary for the Court to reach Plaintiff's constitutional claims.  And, third, the applicability of the ABC Test to franchises has not yet been determined by the California courts.  *See Vasquez II*, 10 Cal. 5th at 949 n.1 ("[T]he question of California law posed by the Ninth Circuit that we agreed to answer does not involve any inquiry into the general relationship or applicability of the *Dynamex* decision to franchise agreements or arrangements, and we do not address that subject").

Indeed, the FAC asks the Court to interpret California Labor Code section 2775 to harmonize the ABC Test with the California Franchise Investment Law and the California Franchise Relations Act (and with the Franchise Rule and the Lanham Act).  FAC ¶¶ 128-29.  But any construction of the section 2775 by this Court would not be binding on the state courts, rendering its decision advisory only:

> *Pullman* defers to state court interpretations of state law, not only out of concern for comity, but also to avoid "premature constitutional adjudication" that would arise from "interpreting state law without the benefit of an authoritative construction by state courts."  *Gilbertson v. Albright*, 381 F.3d 965, 971 n.6 (9th Cir.2004); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987)(observing that "when federal courts interpret state statutes in a way that raises constitutional questions, a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time—thus essentially rendering the federal-court decision advisory and the litigation underlying it meaningless."

*Potrero Hills Landfill, Inc. v. Cty. of Solano*, 657 F.3d at 889 (cleaned up).

*Pullman* abstention "serves the same function" as "[c]ertification of state law questions to California's highest court."  *Id*. at 889.  Here, a decision to abstain would be consistent with the Ninth Circuit's opinion in *Vasquez v. Jan-Pro Franchising Int'l, Inc.*, 939 F.3d 1045, 1048 (9th Cir. 2019) ("*Vasquez I*"), which also involved the applicability of the ABC Test to franchise arrangements.  In

36

*Vasquez I*, the Court certified to the California Supreme Court the question whether the *Dynamex* decision establishing the ABC Test should be applied retroactively. *Vasquez I*, 939 F.3d at 1048. The Court concluded that the issue was important to workers and businesses and had not been answered by the California Supreme Court. *Id*. at 1049. After the Supreme Court ruled that *Dynamex* is retroactive, *Vasquez II*, 10 Cal. 5th at 948, the Ninth Circuit held that retroactive application of the test did not violate due process. *Vasquez III*, 986 F.3d at 1117-18.

Similarly, in *Ward v. United Airlines*, 889 F.3d 1068 (9th Cir. 2018), the Ninth Circuit certified to the California Supreme Court the issue whether a California statute regulating the wage statements that employees must receive with their paychecks applied to pilots and flight attendants who spent most of their time working outside California. After the Supreme Court held that the law applied to the employees because they were based in California, *Ward v. United Airlines*, 9 Cal. 5th 732 (2020), the Ninth Circuit held that the statute as applied to the employees was not preempted by the dormant Commerce Clause, the Airline Deregulation Act, or the Railway Labor Act. *Ward v. United Airlines*, 986 F.3d 1234, 1239 (9th Cir. 2021). Abstention here would be consistent with the Ninth Circuit's decisions in *Vasquez I*, 939 F.3d 1045, and *Ward v. United Airlines*, 889 F.3d 1068.

In sum, this case should be dismissed for lack of a justiciable case or controversy and failure to state a claim upon which relief may be granted. However, if the Court concludes otherwise, it should exercise its discretion and abstain under *Pullman*.

## CONCLUSION

The Court should dismiss this action without leave to amend. If the Court concludes that dismissal is not appropriate, the Court should abstain.

1      Dated:  April 30, 2021               Respectfully Submitted,

2                                            ROB BONTA
                                           Attorney General of California

3                                            PAUL STEIN
                                           Supervising Deputy Attorney General

4

5                                            */s/ Sharon L. O'Grady*

6                                            SHARON L. O'GRADY
                                           Deputy Attorney General

7                                            *Attorneys for Defendants*
                                           *State of California et al.*

8

9 SA2020304639
42671102.docx

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Notice of Motion and Motion to Dismiss;
Memorandum of Points and Authorities (3:20-cv-02243-BAS-DEB)

## CERTIFICATE OF SERVICE

Case Name:   **International Franchise Association, et al. v. State of California, et al.**
Case No.     **3:20-cv-02243-BAS-DEB**

I hereby certify that on <u>April 30, 2021</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT AND ALTERNATIVE MOTION FOR ABSTENTION; MEMORANDUM IN SUPPORT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 30, 2021</u>, at San Francisco, California.

| | |
|---|---|
| Robert Hallsey | /s/ Robert Hallsey |
| Declarant | Signature |

SA2020304639
42670893.docx