UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTERNATIONAL FRANCHISE ASSOCIATION, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>　v.<br><br>STATE OF CALIFORNIA, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 20-cv-02243-BAS-DEB<br><br>**ORDER GRANTING DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS AND DISMISSING ACTION WITHOUT PREJUDICE (ECF No. 18)** |

　　　　Plaintiffs, various interest groups and associations serving the franchisors and franchisees in the United States, seek the Court's pre-enforcement review of California Labor Code Section 2775(b)(1). Section 2775(b)(1) codifies the "ABC Test" to determine whether a worker should be classified as an employee or an independent contractor. Plaintiffs argue that the ABC Test, as applied to franchises, violates the Dormant Commerce Clause, constitutes regulatory taking without just compensation, and is preempted by federal law. Because Plaintiffs' action is not ripe under Article III and their constitutional claims fail on prudential ripeness grounds, the Court grants Defendants' Rule 12(b)(1) motion and dismisses this action without prejudice for lack of subject matter jurisdiction.

//

# BACKGROUND

## I. Statutory Background

In 2018, the Supreme Court of California decided *Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903, 416 P.3d 1 (2018). The *Dynamex* court held that a three-factor test, known as the "ABC Test," should be applied to determine whether a worker is an employee or an independent contractor. The ABC test requires that workers be classified as employees unless they meet all of the following criteria:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Dynamex*, 416 P.3d at 35. On September 18, 2018, the California legislature enacted Labor Code Section 2775, which adopted the ABC test to determine whether "a person providing labor or services for remuneration" should be considered an employee or an independent contractor for purposes of the Labor Code, the Unemployment Insurance Code, and wage orders of the Industrial Welfare Commission.[1] 2019 Cal. Legis. Serv. Ch. 296 (A.B. 5) (West). Section 2775(b)(1) states in full:

> For purposes of this code and the Unemployment Insurance Code, and for the purposes of wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied:

---

[1] The ABC Test, by statute, has since been extended to determine the eligibility for workers' compensation, unemployment insurance, and disability insurance. *See* Cal. Labor Code § 3351(i). The legislature enacted statutory exceptions to the application of Section 2775 but did not carve out a separate exception for franchisors or franchisees. *See id.* §§ 2776–84.

>(A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact.
>
>(B) The person performs work that is outside the usual course of the hiring entity's business.
>
>(C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

Cal. Labor Code § 2775(b)(1).

The ABC Test replaced a prior, multi-factor test set forth in *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal. 3d 341, 769 P.2d 399 (1989). That test considered the degree of control exerted over work and various other factors:

>(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Borello & Sons*, 48 Cal. 3d at 350–51.

California Labor Code provides instances in which the *Borello* test, rather than the ABC Test, governs, including when a court determines that the ABC Test "cannot be applied to a particular context." Cal. Labor Code §§ 2775(b)(3), 2785(d).

## II.     Procedural History

Plaintiffs International Franchise Association ("IFA"), Asian American Hotel Owners Association ("AAHOA"), Supercuts Franchisee Association ("SFA"), and Dunkin Donuts Independent Franchise Owners Association ("DDIFO") filed the present action on November 17, 2020. (Compl., ECF No. 1.) Plaintiffs' initial pleading sought declaratory

and injunctive relief on the ground that the application of the ABC Test to franchises is preempted by the FTC Franchise Rule and the Lanham Act. (*Id.*) Defendants moved to dismiss the Complaint for lack of jurisdiction and for failure to state a claim, based in part on Plaintiffs' failure to establish ripeness of their claims. (Defs.' First Mot. Dismiss, ECF No. 10).

In response, Plaintiffs filed an Amended Complaint (First Am. Compl. ("FAC"), ECF No. 14), which contains the following allegations. IFA is an advocacy organization that represents the interests of the franchising industry. (FAC ¶ 40.) IFA's members "are currently subject to civil and criminal penalties for misclassification and willful misclassification" because "[v]irtually all franchise agreements state that the parties are independent contractors." (*Id.* ¶ 47.)

AAHOA is an association of hotel owners, which advocates the business interests of its members. (FAC ¶ 42.) SFA is an association of franchisees of the Supercuts franchise. (*Id.* ¶ 43.) DDIFO is an association of franchisees of the Dunkin Donuts franchise. (*Id.* ¶ 44.) AAHOA, SFA, and DDIFO allege that their right "to control their own relationships with their own employees is also disrupted by the express language in Cal. Labor Code § 2775(b)(1)." (*Id.* ¶ 48.) They allege that their members—franchisees of hotels, the Supercuts hair salons, and Dunkin Donuts stores—may be classified as employees under Section 2775(b)(1) of the California Labor Code. (*Id.*) AAHOA, SFA, and DDIFO also allege that their members are "at risk of losing the benefits of ownership of a franchise" because if classified as employees, their earnings will become the property of the employers under Section 2860 of the California Labor Code that makes everything an employee acquires by virtue of employment the property of the employer. (*Id.*)

Plaintiffs generally allege that Section 2775(b)(1) "has disrupted ongoing commercial franchise relationships in the state of California so that both franchisors and franchisees must operate with uncertainty as to their rights and obligations toward one another if the employment relationship is forced upon them by operation of law." (*Id.* ¶ 49.) Plaintiffs also make the general allegation that "the application of the ABC Test

frustrates their organizational missions," diverts their resources, and interferes with their contractual relations. (*Id.* ¶¶ 50, 51.)

**JURISDICTION**

**I.  Rule 12(b)(1)**

A Rule 12(b)(1) motion tests whether a court possesses subject matter jurisdiction to adjudicate the claims in the action. Fed. R. Civ. P. 12 (b)(1); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004). A Rule 12(b)(1) jurisdictional attack may be either facial or factual and may rely on affidavits or other evidence properly before the court. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009).

"Like other challenges to a court's subject matter jurisdiction, motions raising the ripeness issue are treated as brought under Rule 12(b)(1)." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). "The burden of establishing ripeness . . . rests on the party asserting the claim." *Colwell*, 558 F.3d at 1121. A trial court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). A failure to establish Article III case or controversy or ripeness results in dismissal of the complaint for lack of subject matter jurisdiction. *See Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83, 94 (1998); *see also Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 2000) (dismissing action for lack of ripeness and standing).

**II.  Ripeness**

"The 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "The

ripeness inquiry contains both a constitutional and a prudential component." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir.1993).

### A.     Constitutional Component

A plaintiff who seeks to invoke the jurisdiction of the federal courts must satisfy the threshold requirement of showing an actual case or controversy under Article III of the Constitution. *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). "[T]wo components of the Article III case or controversy requirement are standing and ripeness." *Bova v. City of Medford*, 564 F.3d 1093, 1095–96 (9th Cir. 2009).

"The constitutional component of the ripeness inquiry is often treated under the rubric of [Article III] standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138. To satisfy the constitutional ripeness, or injury in fact required by Article III, the plaintiff must allege "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and quotations omitted). "The touchstone for determining injury in fact is whether the plaintiff has suffered an injury or threat of injury that is credible, not 'imaginary or speculative.'" *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979)).

In pre-enforcement challenges to statute or regulation, "the threatened enforcement [must be] sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Courts have conducted three inquiries to determine whether plaintiffs seeking pre-enforcement review has shown injury in fact: first, whether the plaintiffs have shown "a reasonable likelihood that the government will enforce the challenged law against them"; second, whether the plaintiffs have established, "with some degree of concrete detail, that they intend to violate the challenged law"; and third, "whether the challenged law is

inapplicable to the plaintiffs, either by its terms or as interpreted by the government." *Lopez*, 630 F.3d at 786.[2]

### 1.   Credible Threat of Adverse State Action

The first factor asks whether the plaintiff has established a credible threat of adverse state action in the form of the government's indictment or arrest of the plaintiff, communication of a specific intent to initiate proceedings under the statute, or "a history of past prosecution or enforcement under the challenged statute." *Lopez*, 630 F.3d at 786–87 (quoting *Thomas*, 220 F.3d at 1139) (collecting cases). "'[G]eneral threat[s] by officials to enforce those laws which they are charged to administer' do not create the necessary injury in fact." *Id.* at 787 (quoting *United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 88 (1947)). Neither does "the mere existence of a proscriptive statute." *Thomas*, 220 F.3d at 1139.

Here, the FAC alleges nothing more than a general threat of application of Section 2275(b)(1) to franchises, and the alleged source of the threat is the mere existence of the statute. While Plaintiffs allege various harms that they may suffer if Section 2775(b)(1) were broadly applied to the franchise relationship, such fear is not supported by the pleading or the record. The FAC does not allege that an action has been brought against Plaintiffs or their members under Section 2275(b)(1) nor that Defendants communicated a specific intent to apply the statute to the general franchise relationship. As was the case in *Thomas*, Plaintiffs' allegation of the "threat of enforcement based on a future violation—which may never occur—is beyond speculation." *See* 220 F.3d at 1140.

---

[2] The Court does not elaborate on the third factor because it is not disputed here. Neither Plaintiffs nor Defendants take the position that Section 2775(b)(1) is inapplicable to Plaintiffs. (*See* FAC ¶ 111 (stating that Section 2775(b)(1), on its face, require franchisors to "ignore the contractual arrangements with franchisees in order to comply with" the statute); Defs.' Mem. P. & A. ISO Mot. Dismiss at 7–8 (arguing that the relevant provisions of the California Labor Code do not exempt franchisor-franchisees).)

Plaintiffs argue that their members are subject to ongoing actions brought under Section 2775(b)(1), citing, as the only example, *Fleming v. Matco Tools Corp.*, No. 19-cv-00463-WHO (N.D. Cal., filed Jan. 25, 2019). (Pls.' Opp'n at 5–6, ECF No. 22.) Plaintiffs' conclusory assertion that *Fleming* implicated their members' rights as relevant to the claims raised in this action is not supported by their pleading nor any affidavit or evidence properly submitted to the Court. Setting aside the procedural and evidentiary deficiency of their assertion, *Fleming* does not establish that franchisors or franchisees face an ongoing threat of adverse state action under Section 2775(b)(1) irrespective of particular facts or agreements involved in each case. The plaintiff in *Fleming* requested the court to determine whether the defendant-corporation misclassified the plaintiff and similarly situated distributors as independent contractors, based on the specific contractual agreements in place. (*See* First. Am. Compl., ECF No. 99, *Fleming*, No. 19-cv-00463-WHO (N.D. Cal., filed Dec. 13, 2021).) The relief requested in *Fleming* differs from what Plaintiffs seek in this action: a peremptory ruling by the Court that the ABC Test as codified in Section 2775(b)(1) should never be applied to a franchisor-franchisee relationship, regardless of facts and context particular to each dispute that may arise in the future. Plaintiffs have not plausibly stated a credible threat of adverse state action.

### 2. Concrete Intent to Violate the Challenged Law

The second factor examines whether the plaintiff has "allege[d] a concrete intent to violate the challenged law." *Lopez*, 630 F.3d at 787. Even if the meaning of "concrete plan . . . [is not] cast in stone, the Constitution requires something more than a hypothetical intent to violate the law." *Thomas*, 220 F.3d at 1139 (omitting internal quotation marks). "A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan." *Id.* (finding insufficient the allegations that the plaintiffs have violated the housing law at issue by refusing to rent to unmarried couples "in the past" or that they plan to do so in the unspecified future because the plaintiffs did

not specify "when, to whom, where, or under what circumstances" they undertook or planned to undertake the violative actions).

Plaintiffs' FAC is devoid of any allegation of a concrete intent to violate Section 2275(b)(1). Plaintiffs appear to allege that their members are not able to operate their franchise businesses without violating Section 2775(b)(1). (*See* FAC ¶ 110 ("Whether or not there is a threatened action against a franchisor, franchisors are unable to manage their businesses until a court determines that the ABC Test is not the right test for franchise relationships.").) In *Thomas*, the Ninth Circuit found a similar allegation was insufficient: there, the plaintiff-landlords' general fear of enforcement of the housing law at issue, without more, was not enough to establish their concrete intent to violate the law. *See Thomas*, 220 F.3d at 1139 (finding insufficient the allegation that the plaintiffs "must violate the housing laws to remain true to their religious beliefs"). Here, too, in the absence of any allegations as to how Plaintiffs have violated or plan to violate Section 2775(b)(1), the Court cannot find that the FAC plausibly states Plaintiffs' concrete intent to violate the statute. *See Thomas*, 220 F.3d at 1139.

In sum, the FAC does not establish that Plaintiffs face a reasonable or imminent threat of prosecution under Section 2775(b)(1). The claimed threat is entirely dependent on the occurrence of unforeseeable events: whether any particular franchisors or franchisees will engage in a provision of labor or services for remuneration for purposes of Section 2275(b)(1); whether either party to the transaction will file a complaint or report the alleged violative conduct to the enforcement agencies; and whether the state will decide to enforce the statute. Because Plaintiffs have not plausibly alleged a reasonable or imminent threat of enforcement of Section 2775(b)(1), the dispute is not ripe under Article III of the Constitution.

//
//
//
//

## B. Prudential Component

Further, Plaintiffs' constitutional claims—a dormant commerce clause claim (FAC ¶¶ 118–24) and regulatory taking claim (*id.* ¶¶ 130–34)—fail the prudential component of the ripeness doctrine. "The question of prudential ripeness requires [the courts] to first consider the fitness of the issues for judicial review, followed by the hardship to the parties of withholding court consideration." *Oklevueha*, 676 F.3d at 837.

### 1. Fitness for Judicial Review

"Cases in which the courts are left to hypothesize about how the law might be applied" are not fit for judicial review. *Oklevueha*, 676 F.3d at 837–38 (collecting cases). Where it is not clear that a particular statute would be applied to the objecting parties, the Supreme Court has refused to decide the constitutionality of the law. *W. E. B. DuBois Clubs of Am. v. Clark*, 389 U.S. 309, 312 (1967) ("[T]he District Court should not be forced to decide . . . constitutional questions in a vacuum."). "A concrete factual situation is necessary to delineate the boundaries of what conduct the government may or may not regulate without running afoul of the Commerce Clause." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). Similarly, a takings claim is not fit for judicial review until facts establishing that a taking has taken place are presented to the court. *See Horne v. Dep't of Agric.*, 569 U.S. 513, 525–26 (2013) (clarifying that a Fifth Amendment takings claim fails on prudential ripeness grounds "until it is clear that the Government has both taken property and denied just compensation"); *see also Knick v. Twp. of Scott, Penn.*, 139 S. Ct. 2162, 2167 (2019) (holding that a property owner's Fifth Amendment claim is ripe "when the government takes his property without paying for it").

Here, Plaintiffs do not offer any facts from which their dormant commerce clause claim or the regulatory taking claim may arise. The Complaint does not make clear which members of Plaintiffs would face the claimed constitutional injuries in what context. The Court is bound to speculate as to how Section 2275(b)(1) would violate Plaintiffs' constitutional rights, in the absence of the context and facts in which to draw the boundaries

of the scope of the statute. Thus, for the Court to reach the merits of Plaintiffs' constitutional claims would be to act as an "umpire to debates concerning harmless, empty shadows." *San Diego Cnty. Gun Rts. Comm.*, 98 F.3d at 1132.

Plaintiffs argue that their regulatory taking claim is ripe because it is a facial challenge to Section 2775(b)(1). The argument is not persuasive. A regulatory taking claim is "not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Dalewood Holding LLC v. City of Baldwin Park*, No. 2:19-CV-1212-SVW, 2019 WL 7905901, at *4 (C.D. Cal. Oct. 17, 2019), *aff'd*, 859 F. App'x 62 (9th Cir. 2021). Plaintiffs' FAC states that Section 2775(b)(1)—"[w]hen applied to franchise relationships"—effects a regulatory taking of "franchisor and franchisee contractual rights qualifying as independent contractor relationships." (FAC ¶ 131.) Missing from the record are factual allegations or permissible evidence that would establish if or how Section 2775(b)(1) will be applied to franchises. In other words, Plaintiffs' assumption that Section 2775(b)(1) will generally interfere with most franchise contracts is not supported by the record. In the absence of that context, the Court is left to speculate if or how Section 2775(b)(1) might be applied to franchises. Therefore, at this juncture, it would be premature for the Court to reach the merits of Plaintiffs' regulatory taking claim.

### 2. Hardship to the Parties

Hardship to the parties resulting from the court's decision not to decide the action in its current posture "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Colwell*, 558 F.3d at 1128 (quoting *Natural Res. Def. Council v. Abraham*, 388 F.3d 701, 706 (9th Cir. 2004).) "Plaintiffs must show that postponing review imposes a hardship on them 'that is immediate, direct, and significant.'" *Id.* (quoting *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1326 (9th Cir. 1992)); *see also Ass'n of Am. Med. Colls.*

*v. United States*, 217 F.3d 770, 783 (9th Cir. 2000) ("The rule in *Abbott Laboratories* has been carefully circumscribed to regulations that pose an immediate dilemma.").

Plaintiffs argue that the codification of the ABC Test in Section 2275(b)(1) places its members at general risk of civil and criminal penalties. However, Plaintiffs have not shown a plausible basis to fear an immediate enforcement of Section 2275(b)(1) against all franchise relationships, devoid of context. While some of Plaintiffs' members may face complaints or enforcement actions under Section 2775(b)(1) because of their specific business arrangements, those actions would be better fit for case-by-case review, rather than a broad pre-enforcement judicial review that Plaintiffs seek in this action.

### III. Leave to Amend

Defendants request that if this Court decided to grant their motion to dismiss, the dismissal be without leave to amend. (Defs.' Mot. at 35, ECF No. 18; Defs.' Reply at 15, ECF No. 23.) Plaintiffs have not requested an opportunity to amend their pleading. In addition, Plaintiffs have already amended their Complaint once in response to Defendants' earlier motion to dismiss (ECF No. 10), which was based in part on the ground that this action is not ripe for the Court's decision. Because "[P]laintiffs have already had one opportunity to cure the jurisdictional defects of their complaint and still were unable to correct those problems," and because Plaintiffs made no showing that they could amend the pleading that would cure the defect, the Court does not grant Plaintiffs leave to amend. *See San Diego Cnty. Gun Rts. Comm. v. Reno*, 926 F. Supp. 1415, 1425 (S.D. Cal. 1995), *aff'd*, 98 F.3d 1121 (9th Cir. 1996).

### CONCLUSION

The Court lacks jurisdiction over Plaintiffs' action because it is not ripe under Article III. Further, Plaintiffs' constitutional claims fail on prudential ripeness grounds. The Court thus **GRANTS** Defendants' Rule 12(b)(1) motion to dismiss. (ECF No. 18.) The Court **DISMISSES** this action **WITHOUT PREJUDICE**. *See Karim-Panahi v. Los Angeles*

*Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1988) (holding that a claim dismissed for lack of ripeness should have been dismissed without prejudice).

**IT IS SO ORDERED.**

**DATED: January 12, 2022**

Hon. Cynthia Bashant
United States District Judge